568 So.2d 629 (1990)
STATE of Louisiana, Appellee,
v.
Jeffery LARD, Appellant.
No. 21808-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*631 May & Beal by James E. Beal, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen. Baton Rouge, John C. Blake, Dist. Atty., H. Russell Davis, Asst. Dist. Atty., Arcadia, for appellee.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
A jury found defendant, Jeffery Lard, guilty of attempted forcible rape, LSA-R.S. 14:27 and 14:42.1, as indicted. A sentence of 25 years at hard labor, with one year to be served without benefit of probation, parole or suspension of sentence, followed his adjudication as an habitual offender and the trial court's receipt of a presentence investigation report.
Defendant now appeals, reserving three assignments of error. For the reasons hereinafter expressed, we affirm both the conviction and sentence.

FACTS
Between 8:00 and 9:00 a.m. on January 11, 1989, defendant, then 18 years of age, presented himself at the home of JF, a 61-year-old female, and requested that she allow him to sweep leaves in her yard. After first questioning whether earlier rains had not made such work too difficult, she instructed him on where to begin. Defendant had worked at the residence before, and JF had known him and his family for many years.
In response to defendant's request that she call her son concerning any yard work he needed performed, JF utilized the telephone in her bedroom, the first convenient room after entering the house. Upon terminating a brief phone conversation with her daughter-in-law, she turned to find defendant standing in the same room at the foot of a twin bed. After explaining that her son had no need for yardwork that day, JF then walked toward the door, expecting defendant to follow. Instead, he grabbed her and demanded that she sexually submit to him or else he would kill her. When she responded, "I am prepared to die and I'd rather die," defendant threw her on the bed and began choking her, causing her to momentarily lose consciousness.
After coming to, she kicked defendant and caused him to fall against the other twin bed. She quickly reminded him of her daughter-in-law's awareness that he was at the residence, and stated that an employee of her son would be arriving shortly. Defendant decided to leave, but first cautioned JF that he would kill her if she told anyone of his actions. Seizing the opportunity to arm herself, JF grabbed a brass picture frame, swung it at defendant, and told him he could kill her but people would know he did it.
Upon defendant's departure, JF telephoned her daughter-in-law to immediately come to the home. After complying with that request and learning of the attack, the daughter-in-law promptly called the sheriff's department. Officers began their investigation and later arrested defendant, after his father located him approximately two to three miles from JF's home.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant complains of the trial court's refusal to allow cross-examination of the victim in *632 reference to her marital status and relationship with her husband. He contends such a limitation violated his right of confrontation accorded by LSA-Const. Art. 1, § 16 (1974), given that no physical evidence connected him to the crime.
Defense counsel succeeded in eliciting testimony from JF that she and her husband had separate bedrooms. However, in response to further efforts to explore the sleeping arrangments, the state objected on relevancy grounds. Reacting to that objection, defendant's attorney explained:
Mr. Mullins: I've got, if I can get them here this afternoon or tomorrow regarding the relationship between she and her husband, they were at odds. He was living somewhere else, Your Honor. She's come in and testified that her husband left at 4:00, etc., etc., etc., Your Honor, I'm trying to show what I'm trying to get to that this is nothing more than a ploy on her part to get her husband's attention and that's exactly where I'm going, Your Honor. I think I'm entitled to some leeway, Your Honor.
The Sixth Amendment and LSA-Const. Art. 1, § 16 (1974) guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. Confrontation, for constitutional purposes, means more than being allowed to attend the trial and hear the witnesses. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940). Accord State v. Hillard, 398 So.2d 1057 (La. 1981); State v. Giordano, 259 La. 155, 249 So.2d 558 (La.1971). Cross-examination is the primary means by which the believability of a witness and the truth of his testimony are tested. Hillard, supra.
The extent of cross-examination is not without limitation, however. In order for evidence to be admissible at trial, it must be relevant. Relevant evidence is that:
having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
LSA-C.E. Art. 401.
The determination concerning relevancy of tendered evidence, and therefore the scope and extent of cross-examination, is within the discretion of the trial judge whose rulings will not be disturbed in the absence of an abuse of discretion. State v. Donald, 440 So.2d 862 (La.App. 2d Cir.1983), writ denied, 443 So.2d 1126 (La.1984).
By querying JF about sleeping arrangements, defense counsel sought to demonstrate marital disharmony between the victim and her spouse, and to create doubt about the motive for her accusations. We, however, concur with the trial court's ruling that this line of questioning was irrelevant. Certainly, from the fact of the couple's separate bedrooms, it is too tenuous to infer that the wife would fabricate the attempted rape.
Without objection, the defense asked JF about the amount of time her husband was away from home overnight, previous marital problems including a legal separation in 1947, and a supposed affair her husband had. Similar questions posed to the victim's son, daughter-in-law, and a neighbor, elicited no answers substantiating defendant's contentions. Moreover, defendant failed to produce any witness who could testify to the couple being estranged.
Our review discloses no abuse of discretion by the trial judge in controlling the breadth of cross-examination. In fact, the record reflects defendant to have been granted substantial latitude in exploring the indicated subject matter. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
By the next assignment of error, defendant challenges the sufficiency of the evidence to support his conviction. He argues that the lack of physical evidence linking him to the crime scene renders it inconceivable that a jury could be convinced of his guilt beyond a reasonable doubt.
*633 The criterion for reviewing sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that all the elements of the crime had been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984); State v. Chism, 436 So.2d 464 (La.1983). That standard, initially enunciated in Jackson, and legislatively adopted with the enactment of LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Willis, 446 So.2d 795 (La.App.2d Cir.1984).
There is no physical evidence indicating that defendant entered the victim's home and assaulted her in the bedroom. The only item she recalled that he may have touched was the doorknob at the entrance to the carport, but an attempt to secure fingerprints there proved unsuccessful. The entry hallway and bedroom were carpeted, and no footmarks appeared in the house. An inspection of the shoes defendant wore on the day of the incident revealed no carpet fibers. Although JF testified to swinging the picture frame at defendant, she did not strike him or inflict any wounds which would have yielded tissue or blood samples supporting her revelations.
Only the victim's testimony placed defendant in the home. Yet this evidence does not stand alone, but is corroborated by the other witnesses.
JF stated that once defendant left her home she became hysterical. The first two people to arrive at the scene, the daughter-in-law and son, confirmed the victim's emotional state, as did Deputy Lucky Raley, who described her as very shaken but coherent. JF indicated defendant initiated the attack by grabbing her around the arms, throwing her onto the bed, and choking her until she lost consciousness. Her daughter-in-law observed red blotchy marks on her neck and blue blotchy areas on her face. Her son also reported her having facial discolorations. Dr. Boersma, JF's regular physician who examined her later in the day, described hemorrhages on her face, eyelids, forehead and soft palate, which could have been caused by someone attempting to choke or strangle her. He noted tenderness in her rib area and, some two months later, diagnosed a broken rib. Although finding no bruises on her arms or neck, he explained that it was not unusual for 24 to 36 hours to lapse before these appeared, and that such disfeaturements might never develop if the trauma consisted of pressure without movement.
Defendant admitted being at JF's home during the morning in question. A neighbor, who engaged him in conversation as he left the victim's driveway, testified that defendant appeared "shaky."
It is not the function of appellate courts to reevaluate credibility of witnesses and then proceed to overturn factual determinations of guilt. LSA-Const. Art. 5, § 5(C) (1974); State v. Richardson, 425 So.2d 1228 (La.1983). It is the province of the jury, and not that of the appellate court, to assess credibility of witnesses. State v. Trosclair, 443 So.2d 1098 (La. 1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Shepherd, 566 So.2d 1127 (La.App.2d Cir. 1990).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Emerick, 499 So.2d 195 (La. App.2d Cir.1986); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.1984), writ denied, 462 So.2d 189 (La.1984). Credibility is a matter to be decided by the trier of fact. State v. Klar, 400 So.2d 610 (La.1981); State v. Briggs, 526 So.2d 297 (La.App. 3rd Cir.1988), writ denied, 536 So.2d 1213 (La. 1989); State v. White, 508 So.2d 982 (La. App. 3rd Cir.1987), writ denied, 512 So.2d 1184 (La.1987).
A rational trier of fact, upon weighing the victim's testimony as substantiated by other witnesses, clearly could find beyond a reasonable doubt that someone attempted to rape her and that defendant *634 was the perpetrator. And, indeed, the jury obviously chose to believe JF. Where the trier of fact has made a rational credibility determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La.1988). This assignment of error also lacks merit.

ASSIGNMENT OF ERROR NO. 3
In his final assignment of error, defendant challenges his conviction as an habitual offender and, on grounds of excessiveness, the resultant sentence.
Subsequent to his attempted forcible rape conviction, the state filed a bill of information alleging that, on July 5, 1988, defendant pled guilty to forgery. In adjudging him a second felony offender under LSA-R.S. 15:529.1, the trial court received certified copies of the forgery indictment and minutes of the guilty plea. Additionally, the assistant district attorney, who prosecuted that earlier matter, gave identification testimony confirming the admissions of defendant and his lawyer that the same individual had been convicted in both proceedings.
Defendant initially contests the utilization of the prior conviction, asserting the state failed to prove that his guilty plea followed an adequate advisement of constitutional rights as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
The state, however, is not required to prove Boykin compliance in the absence of a contemporaneous objection by defendant to the court's consideration of the predicate plea. State v. Jefferson, 379 So.2d 1389 (La.1980), cert. denied, 449 U.S. 857, 101 S.Ct. 157, 66 L.Ed.2d 72 (1980), rev'd on other grounds, State v. Mack, 403 So.2d 8 (La.1981); State v. Holden, 375 So.2d 1372 (La.1979). Failing to timely object at the multiple offender hearing, defendant cannot raise the Boykin compliance issue on appeal. State v. Talbert, 416 So.2d 68 (La. 1982); State v. Jackson, 389 So.2d 69 (La. 1980).
In evaluating an assertion of excessiveness of sentence, a two-step process is utilized. First, the record must show that the lower court observed the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983). Articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence, remand is unnecessary even where there has not been full compliance with the article. State v. Lanclos, 419 So.2d 475 (La.1982). Important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of his offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied 521 So.2d 1143 (La.1988).
The PSI reveals the defendant, age 19 at the time of sentencing, dropped out of high school after the eighth grade, with a history of poor academic performance. Unable to maintain steady employment in the pulpwood industry, he continued to reside with his parents.
Approximately six months before committing the instant offense, defendant was sentenced to three years at hard labor in the forgery case but placed on supervised probation for a term of three years. Thus, considering his demonstrated inability to productively utilize a probated sentence, the trial court deemed incarceration necessary.
In the second step of our review, we must determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 *635 So.2d 355 (La.1980). In determining whether a sentence is grossly disproportionate, the crime and punishment are considered in light of the harm done to society. State v. Barberousse, 480 So.2d 273 (La. 1985). The trial judge has wide discretion in the imposition of a sentence within the statutory limits, and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
Before specifying the sentence, the trial judge compared the physical characteristics of the victim to those of her attacker. He described JF as being in her early 60's and small in stature. Defendant, 18 years old at the time of the offense, was noted to be comparatively tall and obviously strong enough to overcome the victim and choke her until she became unconscious. It was also observed that he decided to leave JF's home, situated in a rural area of the parish and isolated from neighbors, only after she defended herself to the utmost. Furthermore, JF had continued to live in that residence, where she was frequently alone overnight due to her husband's work requirements. The court concluded that, following this assault by a man she had known for many years, she obviously could no longer feel secure in her home.
Convicted of attempted forcible rape, defendant faced hard labor for a period of two and one-half to 20 years, with one year to be served without benefit of probation, parole or suspension of sentence. LSA-R.S. 14:42.1, 14:27 D(3). However, being adjudicated a second felony offender enhanced his minimum sentence to 10 years and maximum sentence to 40 years. LSA-R.S. 15:529.1. The court imposed a term of 25 years imprisonment, one year of which is to be served without benefit.
Considering defendant's failure to rehabilitate himself during his probation for an earlier felony conviction, and the violent nature of his more recent crime, which involved a neighbor, it clearly cannot be said that the trial court abused its sentencing discretion.

CONCLUSION
For the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.