623 So.2d 882 (1993)
STATE of Louisiana, Appellee,
v.
Samuel Tyrone JEFFERS, Appellant.
No. 25100-KA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1993.
Rehearing Denied September 16, 1993.
Opinion on Denial of Rehearing September 22, 1993.
*884 Indigent Defenders Office by David R. McClatchey, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty. and Hugo A. Holland, Jr., Asst. Dist. Atty., Shreveport, for appellee.
Before NORRIS, HIGHTOWER and VICTORY, JJ.
HIGHTOWER, Judge.
In response to his plea of not guilty and not guilty by reason of insanity, a jury convicted Samuel Jeffers of two counts of armed robbery, LSA-R.S. 14:64. After adjudicating him a third felony offender as to only Count One and reviewing a presentence investigation report, the trial court imposed consecutive terms of 133 and 66 years of hard labor imprisonment. Defendant now appeals, relying upon 11 of his 14 assignments of error. We remand after affirming both convictions and the 66-year sentence, and vacating the multiple offender adjudication and the corresponding longer term of incarceration.

FACTS
During the twilight hours of October 10, 1991, at the corner of Madeline and Norton Streets in the Mooretown area of Shreveport, defendant drew a handgun and demanded Corwin Brossett's valuables. After relinquishing seven rings, a necklace, and his own pistol, Brossett quickly departed the crime scene. Upon arriving at his aunt's home, he contacted the police and identified his malefactor by a street name, "Tray Dog." Several days later, at the police station, Brossett confirmed this designation by selecting Jeffers from a photographic lineup.
On October 14, 1991, also at dusk, upon encountering Cedric Thomas at the same intersection, defendant again brandished a weapon and directed the young man to surrender his jewelry. On this occasion, unsatisfied with taking earrings and a wallet, Jeffers even demanded clothing. Eventually, clad only in his socks, the victim fled down the street to his grandmother's house. The following day, upon noticing the culprit once more situated at the previously-mentioned street corner, Thomas called the police to facilitate a capture. In addition to confirming identity at the arrest scene, this complainant later specified defendant as the robber at trial.

DISCUSSION

Motion for Continuance Sanity Commission
Jeffers contends in his first assignment that the trial court erred in denying, during a hearing on various motions, his request for a continuance to allow the appointment of a sanity commission.
On July 6, 1992, at the hearing in question, defense counsel stated that defendant's condition had deteriorated so that he could no longer assist in preparing a defense. Thus, announcing an intention to file a motion for appointment of a sanity commission, the attorney sought to continue the other proceedings scheduled for that day, pending resolution of the lunacy matter. However, based on the information at hand, including prior observations of defendant during several court appearances and verbal reports from custodial personnel, the trial judge noted no reason to doubt that competency existed. Nonetheless, the court allowed defendant until July 10, the end of the week, to file the motion for a sanity commission and, also, offered to authorize any subpoenas needed to facilitate the collection of additional evidence. When no such motion later appeared of record, trial began on July 13, 1992.
*885 Hence, while granting approximately four days to file a sanity commission motion, the trial court declined to continue proceedings for that purpose. Defense counsel failed to object to this ruling contemporaneously, and, of course, may not now so complain on appeal. LSA-C.Cr.P. Art. 841; State v. Brown, 552 So.2d 612 (La.App.2d Cir.1989), writ denied, 558 So.2d 581 (La. 1990).
Furthermore, in assailing the trial court's refusal to appoint the sanity commission on July 6, defendant relies upon the bizarre behavior he exhibited later during trial (see discussion on restraints, infra), rather than that information previously available. The appointment of a sanity commission is not a perfunctory matter or a ministerial duty of the trial court, and is not guaranteed to every accused in every case. State v. Lott, 574 So.2d 417 (La.App.2d Cir.1991), writ denied, 580 So.2d 666 (La.1991). Even the fact that a defendant's capacity to proceed is called into question by formal motion does not, for that reason alone, require an order for a mental examination. LSA-C.Cr.P. Art. 643. State v. Lott, supra; State v. Goins, 568 So.2d 231 (La.App.3d Cir.1990), writ denied, 573 So.2d 1117 (La.1991). Given the presumption of sanity, before the court is required to appoint a lunacy commission, the defendant bears the burden of showing by a preponderance of the evidence that reasonable grounds exist to doubt his mental capacity to proceed. State v. Bickham, 404 So.2d 929 (La.1981); State v. Goins, supra. The trial judge's determination in such a matter is entitled to great weight on appeal and will not be set aside absent a clear abuse of discretion. State v. Bickham, supra.
At the time of the July 6 hearing, the trial court logically based its decision on prior dealings with defendant and a psychiatric report, relayed by prison authorities, labeling Jeffers as a malingerer. Indeed, custodial officials recounted that the accused acted strangely only in the presence of authority figures, and behaved normally when alone or with other inmates. Thus, no reasonable doubt of mental capacity having been shown, this assignment of error lacks merit.[1]

Motion for Severance
Almost four months before trial, defendant moved to sever the two counts of armed robbery,[2] contending that the crimes lacked the similarity necessary for joinder and that jury confusion would result. In his third assignment of error, Jeffers complains of the denial of that motion.
Of course, two or more offenses may be charged in separate counts of a bill of information if the offenses are of the same or similar character and triable by the same mode of trial. LSA-C.Cr.P. Art. 493. If prejudice to the defendant would result from such a joinder, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires. LSA-C.Cr.P. Art. 495.1.
However, the defendant bears a heavy burden of proof when he alleges prejudicial joinder of offenses. State v. Smith, 600 So.2d 745 (La.App.2d Cir.1992). A motion for severance is addressed to the sound discretion of the trial court, and the ruling should not be disturbed on appeal absent a showing of abuse of discretion. Id.; State v. Kelly, 576 So.2d 111 (La.App.2d Cir.1991), writ denied, 580 So.2d 666 (La.1991). In determining if joinder may result in prejudice, a trial court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition; and, finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. Id. A *886 severance need not be granted if prejudice may be effectively avoided by other safeguards. State v. Smith, supra.
In the instant case, the state set forth two quite straightforward armed robberies. As described above, the crimes transpired four days apart at approximately the same time of day, at the identical locale, and with both occurring in a similar manner. Each victim separately gave an account of his own incident. One police detective testified about his investigation of these matters, while two other officers conveyed the circumstances of the actual arrest. Thus, the factual evidence posed no problems of confusion or jury hostility. Nor did joinder create obstacles for the defense. In fact, Jeffers only countered the charges by asserting misidentification, and, alternatively, claiming to have been insane at the time of the offenses. Further, the trial court specifically instructed the jury that, for each separate count, a guilty verdict necessitated a finding of each and every element of armed robbery.
Clearly, under these circumstances, the trial court did not abuse its discretion in denying the motion to sever. This assignment of error lacks merit.

Motion for Mistrial
In his fourth and fifth assignments of error, defendant complains that the trial court denied his motion for mistrial. It is contended that the state's evidence referred to "other crimes," and that a jury admonition failed to cure the resultant prejudice.
While questioning Detective J.T. Muller, the prosecutor asked the officer if he could associate the street title, "Tray Dog," with an actual person. After responding that the fanciful nickname appeared in one of the police reports, the investigator further noted that he had "a prior experience to be involved in a [sic] arrest on Samuel Jeffers." This latter remark prompted a defense motion for mistrial. However, upon correctly recognizing that Muller's unsolicited comment should not be attributed to the district attorney, the trial court elected to admonish the jury to disregard the officer's answer and, also, instructed the prosecutor to resubmit the question.
LSA-C.Cr.P. Art. 770 provides mandatory grounds for mistrial under certain circumstances involving improper remarks from a judge, prosecutor, or court official. Law enforcement officers, however, are not members of the class governed by this statutory provision. State v. Essex, 618 So.2d 659 (La.App.2d Cir.1993); State v. White, 593 So.2d 882 (La.App.2d Cir.1992). Instead, LSA-C.Cr.P. Art. 771 controls by stating, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
. . . .
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Mistrial, a drastic remedy, is warranted only when substantial prejudice would otherwise result to the accused. State v. White, supra, and authorities cited therein. Furthermore, the determination of whether an admonition will adequately assure a fair trial lies within the sound discretion of the trial court. Id. Here, although Detective Muller obliquely mentioned a prior arrest, he by no means detailed the nature of the crime involved. Such an indirect reference to other crimes is easily remedied by an admonition. Cf. State v. Powell, 598 So.2d 454 (La.App.2d Cir.1992), writ denied, 605 So.2d 1089 (La. 1992).
Furthermore, upon the court's admonition to the jury, defense counsel failed to object to the sufficiency of its content. Even so, we find that the instruction, to disregard the *887 challenged remark, sufficiently cured any supposed prejudice from the officer's ambiguous reference. Hence, these two assignments of error lack merit.

Restraints at Trial
In his sixth assignment, defendant argues that the court erred in having him handcuffed and strapped to his chair during trial, rather than having him altogether removed from the courtroom, due to his disruptive behavior. Such restraint, he contends, destroyed the presumption of innocence.
The standards for judging the propriety of restraint in the courtroom has been explained by this court in State v. Calhoun, 554 So.2d 127, 132 (La.App.2d Cir.1989), writ denied, 558 So.2d 601 (La.1990):
Ordinarily a defendant before the court should not be shackled, handcuffed or garbed in any manner destructive of the presumption of his innocence or destructive of the dignity and impartiality of the judicial proceedings. [Citations omitted.] However, exceptional circumstances may require, in the discretion of the trial court, the restraint of the prisoner for reasons of court room security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. [Citations omitted.] For a finding of reversible error, the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused. [Citations omitted.]
As reflected by the record, ample justification existed for the personal restraints utilized in the present case. Prior to trial, Jeffers attempted to break from custody when taken to the LSU Medical Center for oral surgery. Then, on the day of trial, he actually escaped briefly. Understandably, then, the court deemed the handcuffing-to-his-chair measure necessary for preventing further endeavors at flight. Notably, in an effort to minimize any prejudice, the judge directed that the manacles be camouflaged with a blanket.
Nevertheless, during the course of voir dire, defendant tapped his feet loudly, shifted his chair, and removed the covering, thus revealing the handcuffs to the jury. Warnings from the court to cease the movements and noise failed to thwart the accused's activities. Eventually, the trial judge offered to remove defendant from the courtroom or to strap him in the chair. Defense counsel, however, objected to either procedure. The court then recalled the jurors and instructed them to decide the case based upon the evidence presented, not on "actions or other things you may see in the courtroom."
Once trial began, the obstreperous conduct persisted. Jeffers continually rattled his handcuffs, kicked the carpet, pushed his chair back, and barked like a dog. The court ordered additional restraints, again covered with a blanket. Still, the disruptive behavior continued. Towards the end of the trial, prompted by the accused's repeated attempts to remove his restraints, the court ordered him strapped into his chair. This response met with defense objection.
When faced with a disruptive, contumacious, stubbornly defiant defendant, trial judges must have sufficient discretion for meeting the particular circumstances. While no one measure for maintaining appropriate courtroom decorum will be best in all situations, the courts have recognized at least three constitutionally permissible ways to handle an obstreperous defendant: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; or (3) take him out of the courtroom until he promises to conduct himself properly. State v. Hall, 606 So.2d 972 (La.App.3d Cir.1992) (citing Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)).
We are convinced that the trial court did not abuse its discretion in ordering this defendant restrained. Based on the described problems and repeated escape attempts, the court reasonably believed manacles to be necessary. Cf. State v. Calhoun, supra; State v. Colvin, 452 So.2d 1214 (La.App.2d Cir.1984), writ denied, 457 So.2d 1199 (La. 1984); State v. Weeks, 449 So.2d 1158 (La. App.2d Cir.1984). Although Jeffers now argues that a more proper procedure would have been to remove him from the courtroom, the trial judge declined to utilize this measure, opting in favor of protecting defendant's *888 right to be present during the trial. See LSA-C.Cr.P. Art. 831. This assignment of error lacks merit.

Limiting Cross-Examination
In his eighth assignment, defendant argues that the district court improperly curtailed his cross-examination of an expert psychiatrist. Theorizing that Jeffers had been deprived of certain diagnostic tests due solely to prohibitive costs, defense counsel sought to question Dr. Norman Mauroner about the expense and time involved in such procedures. After allowing a few questions, the prosecutor challenged the relevancy of these inquiries, and the trial judge sustained the objection.
Although cross-examination is essential to the accused's right of confrontation, its extent is not without limitation. The determination concerning relevancy of tendered evidence, and therefore the scope and extent of cross-examination, is within the discretion of the trial judge, whose rulings will not be disturbed in the absence of abuse. State v. Lard, 568 So.2d 629 (La.App.2d Cir.1990).
Here, the accused contends that his mental problems could have been discovered through the tests in question; however, both psychiatrists called as witnesses, Drs. Mauroner and John Straumanis, agreed that none of his symptoms warranted such examinations. Nor did Jeffers ever request such procedures. Indeed, neither expert could diagnose any mental defect on defendant's part; they instead found him to be a malingerer. Hence, the record discloses no abuse of discretion in the sustaining of the state's objection. This assignment of error lacks merit.

Sufficiency of the Evidence
Another assignment of error (Number 13) challenges the sufficiency of the evidence to support the two convictions. Defendant predicates this argument upon an averred lack of believability of the victims' stories.
The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984); State v. Chism, 436 So.2d 464 (La.1983); State v. Lard, supra. That standard, initially enunciated in Jackson, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Perry, 612 So.2d 986 (La.App.2d Cir.1993).
Armed robbery is the taking of anything of value belonging to another from the person of another or that is the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64. As discussed above, Jeffers approached both Thomas and Brossett, at dusk on separate days at the same location, brandished a pistol, and demanded their valuables. In addition to the jewelry taken from both men, the accused also appropriated Brossett's pistol and Thomas's wallet and clothing. Soon after the crimes, both individuals identified defendant as their malefactor and, later at trial, confirmed that designation.
Jeffers correctly asserts that no one other than the victims observed the robberies. Even so, it is the function of the judge or jury to assess credibility and resolve conflicting testimony. State v. Bonnett, 524 So.2d 932 (La.App.2d Cir.1988), writ denied, 532 So.2d 148 (La.1988). Where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La.1988). Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Reaves, 569 So.2d 650 (La.App.2d Cir.1990), writ denied, 576 So.2d 25 (La.1991); State v. Shepherd, 566 So.2d 1127 (La.App.2d Cir. 1990); State v. Emerick, 499 So.2d 195 (La. App.2d Cir.1986).
Here, in addition to testimony by the victims, the state introduced four items of correspondence written by Jeffers, from jail, *889 offering the two men money to recant their accusations. Indeed, one letter informed Brossett that his gun could be retrieved from defendant's girlfriend. Furthermore, after the police recovered a ring from Jeffers, Brossett identified that object as his property by noting the initials of an uncle carved into the band.
Certainly, when viewed in the light most favorable to the prosecution, the record permits a rational juror to find beyond a reasonable doubt that defendant robbed both Corwin Brossett and Cedric Thomas while armed with a dangerous weapon. Hence, this assignment also lacks merit.

Habitual Offender Adjudication
In his tenth assignment, Jeffers maintains that the trial court erred in finding him to be a third felony offender.[3] He argues that the transcripts of his two previous guilty pleas, introduced into evidence at the recidivist hearing, had been improperly certified. We agree.
To prove that a defendant is an habitual offender, the state must establish by competent evidence that there is a prior felony conviction and that the defendant is the same person convicted in the previous proceeding. State v. Shepherd, supra. After presenting certified copies of bills of information charging Jeffers with the two prior felonies in the same district court as conducted the present trial, the state called an expert in fingerprint identification. This witness confirmed that the prints displayed on the earlier documents matched those of the defendant.
Where, however, as in this case, a prior conviction resulted from a guilty plea, the state must present a record made contemporaneously with the acceptance of that plea showing that defendant effectively waived his rights pursuant to Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). State v. Baker, 471 So.2d 945 (La.App.2d Cir.1985); State v. Collins, 546 So.2d 1246 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990). Although the prosecution here introduced certified copies of court minutes from both of the previous proceedings, those documents reveal only that "the court informed the defendant of his constitutional rights as per Boykin vs. Alabama." This statement, standing alone, does not sufficiently demonstrate an explanation and waiver of defendant's constitutional rights. Accordingly, the presented minute entries do not suffice to meet the state's burden of proof. Cf. State v. Jones, 516 So.2d 396 (La.App. 5th Cir.1987).
Of course, over defense objection, the state also introduced transcripts of the prior guilty pleas. Those records may well show that Jeffers received ample explanation of his constitutional rights and waived them knowingly and voluntarily. Nevertheless, as noted by defendant, these documents do not bear the certifying signatures of the court reporters. Having no indication that the challenged documents are true and correct re-creations of the earlier proceedings, we find that the trial court erred in accepting the writings into evidence. Thus, in proof of an essential link in establishing the prior felony convictions, we are relegated to consideration of the above-mentioned inadequate, sparsely-worded minute entries. Accordingly, we must vacate the sentence on the first count of armed robbery and remand the case for further proceedings consistent with this opinion.

Excessive Sentence
After finding Jeffers to be a recidivist as to the first count of armed robbery, the trial court ordered him to serve consecutive terms of hard labor incarceration of 133 and 66 years. In his eleventh and twelfth assignments *890 of error, defendant contends that the trial court erred in both denying his motion to reconsider sentence and imposing an excessive sentence. Because the 133-year term of incarceration is to be vacated for other reasons, we need only address Jeffers's concerns as they pertain to the 66-year sentence.
Inasmuch as sentencing transpired in October 1992, LSA-C.Cr.P. Art. 881.1 governs the instant complaint. That article precludes the state or the defendant from urging, on appeal, any ground or objection to the sentence not previously raised in a motion to reconsider. LSA-C.Cr.P. Art. 881.1; State v. Dyer, 621 So.2d 51 (La.App.2d Cir.1993).
In the present case, upon imposition of sentence, defendant orally moved the court to reconsider. At that time, Jeffers asserted his sole objection as follows:
Your Honor, at this time I would like to move for the Court to reconsider the sentence that it just imposed considering that neither of the victims in the case were actually physically injured.
To this, the court responded that it originally intended to impose a longer sentence but, upon considering the mentioned factor in mitigation, had lowered the period of incarceration. Obviously, this assignment of error lacks merit.
Jeffers now argues also that his sentences are constitutionally excessive. That, of course, was not the basis of his motion to reconsider. Besides, even when examined in light of a bare claim of excessiveness, the record amply justifies the selected sentence of 66 years for armed robbery.

Abandoned Arguments
Initially, Jeffers also assigned three errors concerning the testimony of the psychiatrists. His appellate brief, however, does not address these contentions. Assignments of error neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir.1989), writ denied, 558 So.2d 1123 (La. 1990).

Errors Patent
At the request of defendant, we have examined the record for errors patent and find none.

CONCLUSION
For the foregoing reasons, both convictions are affirmed, as is the 66-year term of imprisonment on Count Two. However, as explained, the habitual offender adjudication and corresponding 133-year sentence is vacated as to Count One, and the case is remanded for further proceedings consistent with the views expressed herein.
CONVICTIONS AFFIRMED; SENTENCE AS TO COUNT TWO AFFIRMED; REMANDED.
VICTORY, J., dissents in part.
VICTORY, Judge, dissenting in part.
I agree the defendant's convictions should be affirmed for the reasons given in the majority opinion.
However, I disagree with the majority's conclusion concerning the multiple offenders proceedings. In my view, the transcripts offered by the state were properly admitted by the trial judge. Even though the certified copies offered into evidence do not bear the signature of the court reporter over the typed certification, the record clearly shows that the transcripts were prepared especially for this multiple offender proceeding and were filed with the clerk of court, who certified the copies introduced into evidence. In all likelihood, the certifying clerk simply overlooked conforming the reporter's signature on the copies. However, even without the reporter's signature being shown on the certified copies, the record contains evidence to support a finding that the transcripts are what the state claims them to be. L.C.E.-Art. 901 A. The transcripts clearly show the defendant was properly Boykinized on each prior guilty plea. I would affirm his adjudication as a multiple offender.
I further disagree with the majority in its conclusion defendant did not preserve constitutional excessiveness in his oral motion to reconsider. See State v. Mims, 619 So.2d *891 1059 (La.S.Ct. 1993). His statement to the court, quoted in the majority opinion, expressly gives the ground for his claim of excessiveness, although he failed to expressly say the sentences were excessive. In my view, the statement made in the oral motion to reconsider leads to no other conclusion than the defendant was complaining his sentences were excessive. I believe his statement is sufficient to preserve a claim of constitutional excessiveness for appeal and we should fully address the claim.
Before NORRIS, LINDSAY, HIGHTOWER, VICTORY and BROWN, JJ.

ON APPLICATION FOR REHEARING
PER CURIAM.
Originally, anent the recidivist proceedings, after concluding that the trial court erred in admitting guilty plea transcripts uncertified by the court reporter, we vacated the resultant sentence. The state, in its application for rehearing, submits that our ruling is incorrect under the recent supreme court decision, State v. Shelton, 621 So.2d 769 (La.1993). We disagree.
It is true that Shelton broadly altered the previous burden-of-proof scheme in habitual offender adjudications. Under that decision, the state will initially need only show the existence of the prior guilty plea and that counsel represented the defendant in that earlier proceeding. Thereafter, the defendant must produce some affirmative evidence of rights infringement or some procedural irregularity. Only when this is accomplished will the state be required to establish the constitutionality of the previous conviction.
Nevertheless, at the very inception of Jeffers's multiple offender hearing, the state voluntarily agreed to present the Boykin transcripts, without any demand or contention by the defense. Under these circumstances, the prosecution assumed the responsibility of offering admissible evidence, and Shelton's revised allocation of burdens does not control, even presupposing without deciding retroactivity.
Therefore, the state's application for rehearing is denied.
VICTORY and BROWN, JJ., dissent.
NOTES
[1] Similarly, the psychiatrists testifying at trial also failed to find defendant suffering from any mental disorder.
[2] Despite defendant's suggestion in brief that the prosecution failed to join these offenses until the Friday preceding commencement of trial on Monday, July 13, 1992, the record reflects the first filing of the two-count bill of information on March 6, 1992. Concededly, on July 10, the state made a slight day-of-offense amendment to one of the charges.
[3] We again note that the trial court, acknowledging that it acted "out of an abundance of caution," found Jeffers to be a third felony offender only as to the first count of armed robbery. Apparently, the expressed concerns arise from State ex rel Porter v. Butler, 573 So.2d 1106, 1109 (La. 1991), in which the supreme court stated that "policy considerations support the continued viability of the rule precluding habitual offender enhancement of more than one conviction obtained the same date arising out of a single criminal act or episode." However, in the case at hand, although convicted on the same day, defendant committed the robberies of Brossett and Thomas several days apart.