795 So.2d 1292 (2001)
STATE of Louisiana, Appellee,
v.
Cedric Charles O'NEAL, Appellant.
No. 34,814-KA.
Court of Appeal of Louisiana, Second Circuit.
October 12, 2001.
*1293 Peggy J. Sullivan, Monroe, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Laura O. Wingate, Assistant District Attorneys, Counsel for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
WILLIAMS, Judge.
The defendant, Cedric Charles O'Neal, was convicted of vehicular homicide, a violation of LSA-R.S. 14:32.1. Subsequently, he was adjudicated as a third felony habitual offender and sentenced to life in prison, without benefit of probation, parole or suspension of sentence. The defendant appeals.

FACTS
On October 17, 1998, a football game was held between Grambling State University and the University of Arkansas Pine Bluff at the Fairgrounds Stadium in Shreveport. Robin Barrett, a 23-year-old, was attending the game with her friends, including Sandra Lewis. Although he was not attending the game, the defendant was at a tailgate party outside the stadium. During the party, the defendant had several beers and possibly smoked marijuana.
During the third quarter, Robin Barrett, Sandra Lewis and a friend, decided to leave the game. At the same time, the defendant decided he was hungry and borrowed his friend's car, a gold 1964 Chevrolet, to drive to a nearby Subway for something to eat.
At about 9:00 p.m., a police officer working crowd control for the game heard the loud roaring of a car engine and saw an older model gold automobile traveling west on Greenwood Road at a high rate of speed. At the same time, Robin Barrett and Sandra Lewis, along with a crowd of people, were attempting to cross Greenwood Road. As the crowd started to cross the first lane of travel, a Ford Explorer in the outside lane stopped to allow the crowd to cross the street.
The defendant, who was behind the Ford Explorer, approached at a high rate of speed. As he approached the stopped Explorer, the defendant moved into the inside lane of travel. The crowd of pedestrians stepped out from in front of the stopped Explorer into the inside lane of Greenwood Road. The defendant started braking the car; however, the car hit Lewis knocking her backwards toward the curb. She survived, with leg injuries.[1] Robin Barrett was ahead of her friend, and the defendant's car struck her head on. At the time of the impact, the car had slowed down to approximately thirty-four miles per hour.[2] The force of the impact broke both of Barrett's legs and threw her approximately 25 feet into the air and a distance of 83 feet into the east-bound lane of Greenwood Road. She suffered massive head and chest injuries and died shortly thereafter.
Upon its impact with Barrett, the defendant's car spun almost completely around *1294 and stopped. The defendant was arrested. The arresting officers noticed marijuana in the car's ashtray. The defendant was administered a Breathalyzer test shortly after the arrest. The results of the test indicated a blood alcohol content of .112%. The arresting officers also obtained blood and urine samples from the defendant. Subsequent testing of the blood samples showed a blood alcohol content of .11%. Testing of the urine sample revealed the presence of marijuana in the defendant's body.
At the time of the accident, the defendant was 24 years old. He had two prior felony convictions. He had pled guilty in Caddo Parish in 1993 to possession of crack cocaine. Prior to the drug conviction, the defendant had been arrested in Bossier Parish for simple burglary of an automobile and had pled guilty to a reduced charge of simple burglary.
The defendant was tried before a jury for vehicular homicide and found guilty as charged. Subsequently, the state filed a "Third Felony Habitual Offender Bill of Information," alleging that:
The first felony conviction was POSSESSION SCHEDULE II, CONTROLLED DANGEROUS SUBSTANCE, to which (the defendant) pled guilty on OCTOBER 25, 1993, in the First Judicial District Court of Caddo Parish, Louisiana....
The second felony conviction was SIMPLE BURGLARY, which (the defendant) pled guilty to on JANUARY 26, 1994, in the Twenty Sixth Judicial District Court, Bossier Parish, Louisiana....
After said second felony conviction, the said CEDRIC CHARLES O'NEAL committed and was convicted of the third and instant felony offense, namely VEHICULAR HOMICIDE which was committed on or about OCTOBER 17, 1998, and for which he was subsequently convicted on OCTOBER 14, 1999, a period of ten years not having lapsed since the expiration of the maximum sentence imposed on the defendant's first felony conviction and the time of the commission of this said described third felony for which he has been convicted.
The defendant appeared with counsel and pled not guilty to the habitual offender bill of information. Thereafter, the defendant filed a "Motion to Deviate from The Constitutionally Excessive Third Habitual Offender Sentence," and a "Motion for Sentencing Hearing." At the close of the testimony at the sentencing hearing, the trial court denied the defendant's motion to deviate from the habitual offender statute and sentenced him to serve the remainder of his natural life in prison without benefit of probation, parole or suspension of sentence, with credit for time served. The defendant appeals.

DISCUSSION

Voluntariness of the Prior Guilty Plea:
The defendant contends the 1993 Caddo Parish possession of cocaine guilty plea should not have been used to enhance his sentence because the state did not introduce the transcript of the guilty plea. The state argues that the guilty plea was sufficient and once the state filed the minutes of the proceeding, the burden shifted to the defendant to prove any deficiency in the plea.
The record reflects that during the habitual offender hearing, the state introduced the transcript of the 1993 Bossier Parish burglary guilty plea, but it did not introduce the transcript of the 1993 Caddo Parish possession of cocaine guilty plea. Rather, the state introduced only the court minutes which stated that the trial court advised the defendant "of his rights in *1295 Boykin v. Alabama (see Court Reporter's Transcript)."
The defendant objected to the use of his 1993 Caddo Parish guilty plea. He argued that the only evidence of this plea was a minute entry showing he had been advised of his rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). On appeal, he argues that the record does not indicate what statements the clerk considered as the defendant's Boykin rights, and the trial court failed to advise him of the possible penalties for the crime charged. The defendant urges that standing alone, the minute entry was insufficient and the plea should not have been used to adjudicate him a third felony offender.
To obtain a multiple offender adjudication against a defendant, the state must prove by competent evidence that there is a prior felony conviction and that the defendant is the same person convicted in the previous proceeding. State v. Jeffers, 623 So.2d 882 (La.App. 2d Cir.1993). In order to enhance a sentence with a prior guilty plea, the state bears the burden of proving that the guilty plea was constitutionally taken. Before entering a guilty plea, a defendant must be advised of and waive his constitutionally guaranteed right to a jury trial, right to confrontation and privilege against compulsory self-incrimination. Boykin v. Alabama, supra; State v. Flanagan, 32-535 (La.App.2d Cir.10/29/99), 744 So.2d 718.
In State v. Shelton, 621 So.2d 769 (La. 1993), our supreme court held:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
State v. Shelton, supra at 780.
In the instant case, there is no question that the state proved that the defendant was the same person who pled guilty in the two 1993 felonies. The state produced independent proof of the defendant's prior convictions, including the original bills of information and certified copies of the minutes in the prior convictions. Expert fingerprint comparison testimony identified the defendant's fingerprints, taken at the hearing, as the same fingerprints on the two bills of information in the two earlier proceedings. This proof was submitted prior to the defendant's choice to take the stand. Hence, the sole issue presented is whether the state proved that the 1993 possession of cocaine guilty plea was made with an articulated waiver of the defendant's Boykin rights.
*1296 The defendant filed a motion to quash the multiple offender bill of information, together with an "opposition to multibill." The defendant asserted two specific defects regarding the 1993 possession of cocaine guilty plea:
1. That the court did not inquire into the educational background of the defendant to determine whether he understood and could read and write.
2. That the court did not advise the defendant that he had a right to compulsory process to produce witnesses on his behalf.
We find that the state, through the use of the minute entry, has met its burden of proof under Shelton by showing that the defendant was represented by counsel at the time of the plea. Once the state has met its burden of proof, the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity. The defendant alleges that there were defects in the taking of the plea. However, the defendant did not introduce any evidence to show an infringement or irregularity. Therefore, the defendant has not met his burden of proof under Shelton.
In his brief, the defendant cites this court's holding in State v. Jeffers, supra, for the proposition that the state must present more than the "bare minutes" of the prior proceeding to satisfy its burden of proof. In Jeffers, this court stated:
Where, however, as in this case, a prior conviction resulted from a guilty plea, the state must present a record made contemporaneously with the acceptance of that plea showing that defendant effectively waived his rights pursuant to Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). State v. Baker, 471 So.2d 945 (La.App. 2d Cir.1985); State v. Collins, 546 So.2d 1246 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990). Although the prosecution here introduced certified copies of court minutes from both of the previous proceedings, those documents reveal only that "the court informed the defendant of his constitutional rights as per Boykin v. Alabama." This statement, standing alone, does not sufficiently demonstrate an explanation and waiver of defendant's constitutional rights. Accordingly, the presented minute entries do not suffice to meet the state's burden of proof. Cf. State v. Jones, 516 So.2d 396 (La.App. 5th Cir.1987).
Of course, over defense objection, the state also introduced transcripts of the prior guilty pleas. Those records may well show that Jeffers received ample explanation of his constitutional rights and waived them knowingly and voluntarily. Nevertheless, as noted by defendant, these documents do not bear the certifying signatures of the court reporters. Having no indication that the challenged documents are true and correct re-creations of the earlier proceedings, we find that the trial court erred in accepting the writings into evidence. Thus, in proof of an essential link in establishing the prior felony convictions, we are relegated to consideration of the above-mentioned inadequate, sparsely-worded minute entries. Accordingly, we must vacate the sentence on the first count of armed robbery and remand the case for further proceedings consistent with this opinion.
State v. Jeffers, supra at 889.
We note that, on rehearing, this court distinguished its holding in Jeffers from the supreme court's holding in Shelton by stating:
Originally, anent the recidivist proceedings, after concluding that the trial court erred in admitting guilty plea *1297 transcripts uncertified by the court reporter, we vacated the resultant sentence. The state, in its application for rehearing, submits that our ruling is incorrect under the recent supreme court decision, State v. Shelton, 621 So.2d 769 (La.1993). We disagree.
It is true that Shelton broadly altered the previous burden-of-proof scheme in habitual offender adjudications. Under that decision, the state will initially need only show the existence of the prior guilty plea and that counsel represented the defendant in that earlier proceeding. Thereafter, the defendant must produce some affirmative evidence of rights infringement or some procedural irregularity. Only when this is accomplished will the state be required to establish the constitutionality of the previous conviction.
Nevertheless, at the very inception of Jeffers's multiple offender hearing, the state voluntarily agreed to present the Boykin transcripts, without any demand or contention by the defense. Under these circumstances, the prosecution assumed the responsibility of offering admissible evidence, and Shelton's revised allocation of burdens does not control, even presupposing without deciding retroactivity.
State v. Jeffers, supra at 891.
Here, although the prior guilty plea transcript was never entered into evidence, the state proved that the defendant was represented by counsel. Therefore, the burden shifted to the defendant to prove an irregularity, and this burden was never met. Consequently, this assignment of error is without merit.

Excessive Sentence
The defendant contends the mandatory sentence imposed in his case is constitutionally excessive. In response, the state argues that the habitual offender law and the sentences contained therein are constitutional, and this is not a rare case that would justify a downward departure from the mandatory sentence.
The Habitual Offender Law, LSA-R.S. 15:529.1, provides, in pertinent part, as follows:
(A)(1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
. . . .
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
A review of the record reflects that the defendant raised the issue of whether his life sentence was unconstitutional in a "Motion to Deviate from the Constitutionally Excessive Third Habitual Offender Sentence." The record also indicates that the issue of whether the life sentence was constitutionally excessive for this defendant and this crime was not properly addressed by the court or the parties. No evidence was taken, and the trial court *1298 failed to address any of the issues raised by the defendant or to provide any of the factors it used in reaching its decision to deny the defendant's motion.
In the recent case of State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339, the supreme court strongly clarified the law in regard to the method to be utilized by the courts in determining whether a minimum life sentence under the Habitual Offender Law is constitutionally excessive. The court noted that its effort to set forth guidelines to be used by the lower courts when deciding whether to exercise their discretion to declare minimum sentences excessive culminated in State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. In explaining the holding of Johnson, the court stated:
We held that `[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality' and emphasized that `departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.' To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
In making this determination, we held that `while a defendant's record of nonviolent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.' This is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses.
In addition, we held that the trial judge must keep in mind the goals of the statute, which are to deter and punish recidivism, and, we instructed that the sentencing court's role is not to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana's constitution. (citations omitted)
In the instant case, the only comments made by the trial court in response to the defendant's challenge to the constitutionality of the life sentence were as follows:
THE COURT: So noted. And the Court notes the opposition to the multibill and overrules same for the record. With regard to the multibill, at this time the Court finds that the State has sufficiently shown that the defendant is a third felony offender. We do need to set this matter for sentencing.
The trial court provided only a general ruling, and did not address the constitutionality of the sentence under State v. Johnson, supra. It is clear from Lindsey that the supreme court requires more than a general conclusion when the lower court addresses the issue of whether a life sentence for a habitual offender is constitutionally excessive. In State v. Webster, 99-0807 (La.App. 4th Cir.11/10/99), 746 So.2d 799, although the appellate court gave factors to support its reasons for reversing the life sentence, the supreme *1299 court remanded because of the court's failure to apply the test set forth in Johnson.
We note that the record in this case contains evidence of both mitigating and aggravating factors that the trial court should have considered in determining whether the defendant's life sentence was excessive; however, the record does not show that the trial court provided any type of constitutional analysis to those factors.
Consequently, we are compelled to vacate the defendant's life sentence and remand this case to the trial court for reconsideration of whether the minimum life sentence mandated by LSA-R.S. 15:529.1 is constitutionally excessive for this defendant. The trial court is instructed to follow the test set forth in State v. Lindsey, supra, and State v. Johnson, supra, in making that determination.

CONCLUSION
For the above reasons, the defendant's conviction and adjudication as a third felony offender is affirmed. Defendant's sentence is vacated and set aside. The case is remanded to the trial court for re-sentencing in accordance with this opinion.
CONVICTION AND THIRD FELONY OFFENDER ADJUDICATION AFFIRMED; SENTENCE VACATED; REMANDED FOR RE-SENTENCING.
NOTES
[1] The defendant did not recall hitting Lewis.
[2] The speed limit in the area was 35 miles per hour.