605 So.2d 661 (1992)
STATE of Louisiana, Appellee,
v.
Velvet S. SCRIBER, Appellant.
No. 23975-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
*662 John B. Knight, Jr., Winnsboro, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, William R. Coenen, Jr., Dist. Atty., E. Randalph McIntyre, Jr., Johnny R. Boothe, Asst. Dist. Attys., Winnsboro, for appellee.
Before NORRIS, LINDSAY and STEWART, JJ.
LINDSAY, Judge.
The defendant, Velvet Shipley Scriber, was convicted by a jury of second degree *663 battery, in violation of LSA-R.S. 14:34.1, and unauthorized entry of an inhabited dwelling, in violation of LSA-R.S. 14:62.3. The trial court sentenced her to two years at hard labor on each charge, to be served consecutively, with one year of each sentence to be suspended if she made restitution to the victim. She appealed. For the following reasons, we affirm the defendant's convictions and sentences.

FACTS
On April 26, 1990, the defendant was involved in two separate altercations at the Winnsboro home of the victim, Clara Lee, her husband's aunt. On that day, the defendant's husband, Jamie Scriber, moved out of the home he shared with the defendant. He asked his aunt if he could temporarily live at her house. While the defendant was at the hospital with one of her other children, Mr. Scriber took his belongings and Seth, his three-year-old son by the defendant, to the Lee residence.
The first incident at the Lee home occurred at about 7 p.m. when the defendant arrived to retrieve her car. As she had been stranded at the hospital without transportation, two police officers brought her to the house. After placing Seth in the car, the defendant began to drive off. However, once the police officers drove away, the defendant suddenly pulled back into the Lee driveway. Leaving the child in the still running car, the defendant ran into the house and attacked her husband. As the spouses rolled around the floor in a hair-pulling fight, Mrs. Lee attempted to separate them. The police were summoned, and the same officers who had just dropped off the defendant returned to the house. When they arrived, they found the parties outside. The defendant was clinging to her husband, begging him to return to her. Mrs. Lee told the officers that she wanted the defendant off of her property. When instructed by the police to leave, the defendant complied.
However, at about 10 o'clock that night, the defendant returned to the Lee residence with her 24-year-old brother, John R. "Bubba" Shipley, Jr. When the defendant's husband refused to accompany them on a drive, Mr. Shipley, who had a lengthy criminal record for such offenses as battery, violently ripped the front screen door open. The defendant and her brother then forced their way into the Lee house. Mr. Shipley demanded that they be given a radar detector which he claimed to own and which he believed his brother-in-law was trying to sell to a cousin, Terry Scriber. (At some point, Jamie was able to telephone Terry to warn him that Mr. Shipley was looking for him.) The two men began to fight. The defendant then shoved Mrs. Lee out the front door, causing her to severely skin her face when she fell to the sidewalk.
Mrs. Lee screamed for her 13-year-old daughter, Trish, to get help. As the girl attempted to telephone the police, the defendant ripped the telephone cord from the wall and smashed the telephone into several pieces. The terrified girl fled from the house to seek help from neighbors.
Mrs. Lee, who had reentered her home, was again thrown out the front door by the defendant. Both the defendant and her brother began to viciously kick Mrs. Lee as she lay helpless on the sidewalk. At some point, Mrs. Lee was knocked unconscious. Pamela Hodges, Mr. Shipley's girl friend, arrived. She and the defendant's husband were able to stop the beating and then helped the victim into the house. Again, the defendant's brother and husband began to fight. However, the defendant, her brother and Ms. Hodges left before the police arrived.
Several of the victim's relatives and neighbors were summoned to the Lee house. Mrs. Lee's husband then returned home. Enraged by the attack on his wife, Mr. Lee and Jamie went looking for the defendant and her brother with a gun. However, they soon returned home and took Mrs. Lee to the hospital.
After leaving the Lee home, the defendant and her brother encountered Terry Scriber, who supposedly had their radar detector. They spotted him and his girl friend, Sally Frey, driving down the road. The two couples stopped in a pharmacy *664 parking lot where Mr. Shipley took a swing at Terry but missed. The defendant tried to attack Ms. Frey, but her brother told her to leave the girl alone. During this confrontation, both the defendant and her brother bragged that they had just beaten Mrs. Lee.
The defendant and her brother were both charged with second degree battery and unauthorized entry of an inhabited dwelling. After a jury trial, the defendant was convicted as charged. Her brother and codefendant was convicted as charged on the offense of unauthorized entry of an inhabited dwelling and the lesser offense of simple battery.
The defendant was sentenced to consecutive terms of two years at hard labor on each charge. However, the court directed that one year of each sentence be suspended if the defendant made full restitution to the victim of $2,827.14.
The defendant appealed.[1] She contends that the trial court erred in overruling her challenge for cause against a prospective juror and in imposing an excessive sentence.

CHALLENGE FOR CAUSE
The defendant argues that she was denied her constitutional right to a fair trial by an impartial jury because the trial court overruled her challenge for cause against prospective juror Margie Smith. As a result of this ruling, the defendant claims that she was forced to exercise a peremptory challenge against Mrs. Smith which ultimately led to the defense exhausting all of their peremptory challenges prior to the completion of the jury panel.
During voir dire examination, Mrs. Smith initially stated that she had read a newspaper account about the case. Although she said the article did not impress her one way or the other as a factual account, she was not sure she could completely disregard what she had read. She felt that it could possibly influence her judgment as a juror. Consequently, the defense challenged her for cause.
The district attorney then questioned Mrs. Smith, who stated that she would not vote to convict if the state failed to carry its burden of proof and that she could base her decision on the evidence presented in court regardless of what she had read in the newspaper a year before the trial. Defense counsel again questioned her, extracting a statement that she could not say that she would be able to completely disregard what she had read.
At this point, the trial judge questioned Mrs. Smith. She assured the court that she could put aside everything she had heard previously and base her decision strictly on what she heard in court. The court then denied the challenge for cause, and the defense exercised a peremptory challenge to excuse her.
LSA-C.Cr.P. Art. 797(2) provides that a juror may be challenged for cause on the ground that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence; ...
When an accused has exhausted all of his peremptory challenges before completion of the jury panel, he is entitled to complain on appeal of a ruling refusing to maintain a challenge for cause made by him. State v. Monroe, 366 So.2d 1345 (La. 1978), appeal after remand, 397 So.2d 1258 (La.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411, reh. denied, 463 U.S. 1249, 104 S.Ct. 36, 77 L.Ed.2d 1455 (1983). A defendant need show only two things to obtain reversible error: (1) that the trial court erred in refusing to sustain a challenge for cause by the defendant, and (2) that the defendant exhausted all of his peremptory challenges. State v. Albert, *665 414 So.2d 680 (La.1982); State v. Comeaux, 514 So.2d 84 (La.1987).
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992, reh. denied, 478 U.S. 1032, 107 S.Ct. 13, 92 L.Ed.2d 768 (1986).
The trial court is vested with broad discretion in ruling on a challenge for cause which ruling will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Monroe, supra; State v. Comeaux, supra; State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.), writ denied, 456 So.2d 171 (La.1984).
Since the present offenses were not necessarily punishable by hard labor, each of the two defendants had six peremptory challenges. LSA-C.Cr.P. Art. 799. Inasmuch as the record reveals that the defense exhausted all 12 peremptory challenges before completion of the panel, this claim can be considered on appeal.
Although Mrs. Smith initially indicated that the newspaper account she had read more than a year before the trial might "possibly" influence her, her examination by the trial judge demonstrated that she felt able to base her decision as a juror solely upon the evidence presented in the courtroom. The trial judge had the opportunity to observe Mrs. Smith's demeanor as he and the attorneys questioned her, and he certainly was in the best position to evaluate her impartiality. Her responses as a whole failed to reveal a basis from which prejudice or bias could have reasonably been implied. Consequently, we find that the trial court did not abuse its discretion by refusing to excuse Mrs. Smith for cause. See and compare State v. Pettaway, supra at 1359, 1360.
This assignment of error is without merit.

EXCESSIVE SENTENCE
The defendant contends that the trial court erred in imposing an excessive sentence because it ordered her to serve a term of imprisonment. The 30-year-old married mother of three children contends that she was a prime candidate for probation because of her family situation and lack of a prior criminal record. (The defendant and her husband reconciled sometime between the date of the offenses and her trial.)
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.), writ denied 435 So.2d 438 (La.1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).
A trial court is not required to render a suspended sentence or probation on a first felony offense, but may consider whatever factors and evidence are deemed important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984); State v. Tully, supra.
*666 In imposing sentence, the trial court duly considered the mitigating factors and stated that the defendant would ordinarily be a candidate for probation. It noted with regret that the defendant's incarceration would cause hardship for her children. However, the trial court found that the aggravating factors in the present case greatly outweighed the mitigating factors. The defendant's actions caused serious and permanent physical harm to the victim and resulted in substantial medical expenses. No restitution had been made to the victim. The court also noted that a person is entitled to feel safe in her own home and that the defendant was "extremely lucky" that no one was killed in the altercation. The trial court found that the viciousness of the crime demanded that the defendant be confined in a custodial environment and that a lesser sentence would deprecate the seriousness of the offense.
We fully agree with the trial court. The severity of the attack upon the 47-year-old victim, who was much smaller than her younger assailants, cannot be overemphasized. As a result of the merciless beating inflicted by the defendant and her brother, Mrs. Lee sustained a broken collarbone, a fractured right knee, and two fractured ribs. Additionally, she had a large contusion around her right eye, contused kidneys, and at least 20 bruises all over her body. She subsequently required two surgeries on her leg and underwent extensive physical therapy. At the time of trial she was still unable to stand for any length of time and could not straighten her leg. She could no longer pursue her occupation as a beautician. According to her orthopedic surgeon, Mrs. Lee sustained a 20 percent permanent disability of the total body or 50 percent loss of function of the leg.
We also note that the trial court allowed the defendant a substantial benefit by directing that her sentences for both offenses be reduced by one-half if she paid restitution to the victim. The amount of restitution, which is slightly less than $3,000, is the balance still owed on Mrs. Lee's medical bills. (Although Mrs. Lee's medical bills exceeded $26,000, most of them were paid either by her insurance company or the Crime Victims Reparations Fund.)
Based upon the severity of the offense and the great and permanent harm inflicted upon the victim, we find no manifest error in the trial court's imposition of sentence.
This assignment of error is meritless.

CONCLUSION
The defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The defendant's brother was sentenced to concurrent terms of six years at hard labor on the unauthorized entry charge and six months on the simple battery charge. Although he initially appealed his convictions and sentences, he later dismissed his appeal.