618 So.2d 659 (1993)
STATE of Louisiana, Appellee,
v.
David ESSEX, Appellant.
No. 24,781-KA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1993.
*661 James E. Beal, Jonesboro, for appellant.
Richard Ieyoub, Jr., Atty. Gen., Baton Rouge, Walter E. May, Jr., Dist. Atty., Douglas L. Stokes, Asst. Dist. Atty., Jonesboro, for appellee.
Before SEXTON, HIGHTOWER and VICTORY, JJ.
HIGHTOWER, Judge.
A jury found David Essex guilty as charged of aggravated kidnapping, LSA-R.S. 14:44. Subsequently, the conviction resulted in a mandatory sentence of life imprisonment without benefit of probation, parole or suspension. On appeal, defendant asserts nine assignments of error. For reasons hereinafter expressed, we affirm the conviction and sentence.

FACTS
At about 2:30 p.m. on March 20, 1992, when Wanda Atkins returned from work, she discovered defendant in her rural Jackson Parish home, brandishing a pistol he had found in the residence and stating his intention to await the arrival of her husband for whom he had worked several years earlier. During the ensuing hour, Essex allowed his victim to water her houseplants and even joined her in a card *662 game. At all times, however, he remained armed with the weapon.
Wanda's husband, H.E. "Monk" Atkins, arrived around 3:30 p.m. Upon parking and then alighting from his vehicle in an adjoining garage, he observed his wife beating on a nearby window. Essex, standing next to Wanda, immediately dragged her at gunpoint to a door opening onto the carport, while threatening to kill his prisoner unless Monk followed instructions to enter the residence. After the husband complied, defendant soon demanded cash and the couple's assistance in leaving the Jackson Parish area. Discussions about how much money could be obtained, and continued threats of harm to the wife, soon led Monk to agree to retrieve $4,000 from a local bank while his spouse remained a hostage with their malefactor.
Upon arriving at the financial institution, located in Ruston (Lincoln Parish), Monk summoned personnel from the sheriff's office. Thereafter, he and law enforcement authorities from Lincoln and Jackson Parish assembled near the residence. Then, with several officers dispatched in areas surrounding the house, one of the deputies donned the husband's hat and drove his truck partially into the driveway of the Atkins home. In an effort to lure defendant outdoors, the imposter stopped the vehicle and, waiving an envelope, yelled for Essex to come get the money. Although the plan proved unsuccessful, subsequent telephone communications eventually led the offender to exit the residence and surrender.

DISCUSSION

Challenges for Cause
Defendant's first three assignments of error complain that the trial court denied his challenges for cause directed at two prospective jurors, and also sustained a state request to excuse another veniremember for cause.
LSA-C.Cr.P. Art. 797, directed at challenges for cause, pertinently provides:
The state or the defendant may challenge a juror for cause on the ground that:
. . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
. . . .
(4) The juror will not accept the law as given to him by the court....
The trial court is vested with broad discretion in ruling on a challenge for cause, and its ruling will not be disturbed on appeal absent a showing of abuse. State v. Haynes, 514 So.2d 1206 (La.App. 2d Cir. 1987). Even where a veniremember has voiced an opinion seemingly prejudicial to the defense, a trial judge's refusal to excuse the individual for cause is not an abuse of discretion where, upon further inquiry or instruction, the person demonstrates a willingness and ability to decide the case impartially pursuant to the law and evidence. Id.
Essex complains that prospective juror Cheryl Lamkin indicated that, having read about the case in a local newspaper, she would have difficulty limiting her decision to the evidence adduced at trial. Actually, in the earlier phase of voir dire examination, Lamkin assured the judge that she could arrive at her verdict solely through what she heard in the courtroom. Later, to defense counsel, she stated that she would likely remember some of the news article. Finally, after the challenge, and in response to extensive questioning by the court, Lamkin again confirmed that she would base any decision upon the evidence presented. Thus, the district judge did not abuse his broad discretion by refusing to excuse the prospective juror for cause. Cf. State v. Lee, 559 So.2d 1310 (La. 1990); State v. Scriber, 605 So.2d 661 (La.App. 2d Cir.1992); State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984), writ denied, 456 So.2d 171 (La.1984).
*663 Defendant also argues that Paggett,[1] another potential member of the jury, showed a willingness to convict based on evidence insufficient to prove guilt beyond a reasonable doubt. When questioned whether he could acquit if the state proved "90 percent of their case," this individual expressed reservations. Yet, during further inquiry by the defendant and later by the district judge, Paggett specifically stated he understood that guilt depended upon the state successfully proving every element of its case beyond a reasonable doubt. The trial court found the venireman's responses to be satisfactory and rejected the defense challenge for cause. In our view, that decision did not constitute an abuse of discretion. Cf. State v. Widenhouse, 582 So.2d 1374 (La.App. 2d Cir. 1991), writ denied, 586 So.2d 567 (La.1991); State v. Pettaway, supra.[2]
Quite importantly, too, defendant suffered no prejudice from the denial of these two challenges. Neither Paggett nor Lamkin actually served on the jury. Furthermore, while the record indicates the state and defendant utilized a total of seventeen peremptory challenges in impaneling the jury, Essex apparently did not exhaust all his peremptory challenges.[3] Indeed, the trial judge implied as much when, at the conclusion of the selection process, he requested that each side exercise any other peremptory challenges if they so desired. Nor has the defense noted any other objectionable juror that could not be successfully excused. Thus, even any assumed error in the lower court's ruling is harmless.
Another assignment concerns the sustention of the state's challenge for cause directed at prospective juror Sandra Jackson. We agree, however, with the district court's resolution of the matter. This individual indicated that the mandatory life sentence would likely influence her decision of whether to convict. Cf. State v. Jones, 408 So.2d 1285 (La.1982), noting that a determination not to find guilt, due to a mandatory penalty, obviously disqualifies a veniremember pursuant to LSA-C.Cr.P. Art. 797. Moreover, Essex failed to show, as required by LSA-C.Cr.P. Art. 800(B), that the sustained challenge allowed the prosecution more peremptories than otherwise *664 authorized by law. Hence, the ruling affords no basis for complaint.
Accordingly, these three assignments lack merit.

Other Crimes
By his fourth and seventh assignments of error, defendant complains that the trial court denied his motions for mistrial premised upon contentions that the state's evidence referred to "other crimes."
During trial questioning, Wanda Atkins responded negatively when asked whether she had given the intruder "permission to be in the house." Defendant objected, contending the colloquy disclosed the unauthorized entry of an inhabited dwelling. Also, near the conclusion of the state's case, the chief deputy for the Jackson Parish Sheriff's Office identified, among clothing and other items taken from Essex upon arrest, two cigarette pouches containing coins. Wanda, without objection, had previously testified that she owned both of the small purses. The accused argued, however, that introduction of these two exhibits again constituted evidence of other crimes, presumably burglary. The trial judge overruled both defense objections and also, in each instance, denied a motion for mistrial.
LSA-C.Cr.P. Art. 771 is the controlling provision when improper references are made by a victim or law enforcement officer. State v. White, 593 So.2d 882 (La. App. 2d Cir.1992), and authorities cited therein. That statutory provision pertinently states:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
. . . .
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Mistrial, a drastic remedy, is warranted only when substantial prejudice would otherwise result to the accused, and the determination of whether prejudice has resulted lies within the sound discretion of the trial court. State v. White, supra, and authorities cited therein.
In State v. Brewington, 601 So.2d 656 (La.1992), our supreme court reaffirmed its approval of "the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." Given a close relationship of the conduct in time and location, the defendant is unlikely to be unfairly surprised; furthermore, the purpose served by admission is simply to "complete the story of the crime on trial," rather than depict the accused as a bad individual or otherwise attack his character. Id. See also LSA-C.E. Art. 404(B)(1).
After reviewing the record in the present case, it is obvious that the trial court did not err in admitting testimony that Essex lacked permission to be in the Atkins home, or in allowing introduction of the two exhibits in question. Under LSA-C.E. Art. 404(B)(1), such evidence forms an integral part of the act or transaction addressed in the proceeding. Needless to say, the district judge also responded properly in refusing to grant a mistrial.
Defendant's eighth assignment of error contends that the state's closing argument also improperly referred to other crimes. Again, the complaint is meritless.
In his own closing argument, defendant conceded "he was surprised to be in a place where he did not belong," and essentially argued he may have committed some other offense, but not aggravated kidnapping. *665 In rebuttal, the prosecution quite properly attempted to refute the defense hypothesis, twice rhetorically asking why a "surprised burglar" would not make an effort to leave the scene, rather than stay and demand money from his victims. These comments prompted another motion for mistrial, which the trial judge denied without elaboration.
Here, inasmuch as the motion concerned remarks by the prosecutor, LSA-C.Cr.P. Art. 770 (rather than LSA-C.Cr.P. Art. 771) controls. In pertinent part, that article states:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
. . . .
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
In the case before us, not only had the previously discussed evidence been properly introduced, but also the state's comments constitute appropriate rebuttal argument within the scope of LSA-C.Cr.P. Art. 774. Thus, the district judge did not err in denying a mistrial.
These three assignments are without merit.

State Exhibit 3
Another assignment of error maintains that State Exhibit 3, a pair of gloves, should not have been introduced into evidence. We disagree.
During her testimony, Mrs. Atkins described a pair of pale yellow gloves that defendant wore throughout most of the ordeal. Later, although unable to be positive, she identified Exhibit 3 as appearing to be the items worn by the culprit.
Identification of evidence may be established in several ways, including by a witness in court. Lack of positive identification, however, goes to the weight of the evidence rather than admissibility. State v. Harriman, 469 So.2d 298 (La.App. 2d Cir.1985), writ denied, 474 So.2d 1304 (La. 1986); State v. Bean, 582 So.2d 947 (La. App. 2d Cir.1991), writ denied, 586 So.2d 567 (La.1991). In the present case, there certainly existed sufficient evidence of genuineness to permit the jury to make an evaluation of the gloves. See LSA-C.E. Art. 901. See also G. Pugh, R. Force, G. Rault, Jr., and K. Triche, Handbook on Louisiana Evidence Law, Author's Notes, pp. 477-481 (1993).
This assignment is without merit.

Leading Questions
In another assignment, defendant assails the overruling of his objection to leading questions posed by the prosecution.[4]
*666 Generally, leading questions should not be used on direct examination of a witness. LSA-C.E. Art. 611(C). Such questions, however, are not the type of prosecutorial error which diminishes the reliability of a jury verdict. State v. Felde, 422 So.2d 370 (La.1982). The use of leading questions is largely within the discretion of the trial court, and only clear abuse of that discretion which prejudices the defendant's rights will justify reversal of a conviction. Id.; State v. Ross, supra; State v. Young, 576 So.2d 1048 (La.App. 1st Cir.1991), writ denied, 584 So.2d 679 (La.1991).
Upon review, we fail to see any clear abuse of the discretion granted the trial judge which would have prejudiced Essex's rights and now justify reversal, especially in light of the fact that the jury had previously heard essentially the same testimony from the witness's spouse.
This assignment lacks merit.

Sufficiency of the Evidence
By his ninth and final assignment of error, emanating from the denial of a motion for post-conviction acquittal, defendant maintains his conviction cannot be sustained because the evidence failed to reveal (1) that a "carrying from one place to another" occurred; (2) that he specifically communicated a demand for ransom; and (3) that "a return of anyone was ... contemplated."
The criterion for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that all the elements of the crime had been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984); State v. Chism, 436 So.2d 464 (La.1983); State v. Lard, 568 So.2d 629 (La.App. 2d Cir.1990). That standard, initially enunciated in Jackson, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993); State v. White, supra.
LSA-R.S. 14:44 states, in pertinent part:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present of prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person....
Our review of the record reveals that the state successfully established the requisite components of the crime. With respect to the "ransom-for-release" or extortion element, explicit communication by the kidnapper is not the relevant factor, but rather his specific intent to induce something of value either from the victim or some other person in order to secure release. *667 State v. Arnold, 548 So.2d 920 (La.1989). In the instant case, both of the Atkinses testified that defendant indicated he was in "trouble" and that he required money and assistance in leaving the area. The record further shows that, operating under Essex's threat to kill his wife, Monk Atkins departed the house to retrieve $4,000. Such evidence amply supports the offender's intent to extort in order to secure the release of another individual. State v. Arnold, supra.
Defendant's assertion that aggravated kidnapping demands asportation is also conspicuously unimpressive. Subsection (3) clearly does not require movement of the victim. See State v. White, supra, interpreting identical language in LSA-R.S. 14:44.1(B)(3). Hence, upon viewing the evidence in the light most favorable to the prosecution, the jury could well find defendant guilty beyond a reasonable doubt. Such a logical determination should not be disturbed on appeal. See State v. Mussall, 523 So.2d 1305 (La.1988); State v. White, supra.

CONCLUSION
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] While defendant's brief refers to the venireman as Ronnie C. Paggett, the transcript excerpts relate to testimony by Darrell Paggett.
[2] The defense brief also mentions Paggett's relationship with the district attorney and a law enforcement officer. However, at the time of the ruling during trial, and as a basis for the challenge, defendant asserted only the prospective juror's possible misperception of the reasonable doubt standard. Thus, different grounds of complaint may not now be presented. LSA-C.Cr.P. Art. 800(A).
[3] As amended in 1983, LSA-C.Cr.P. Art. 800 states:

A. A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection.
B. The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law.
Since that revision, which concerned only the first paragraph, two recent decisions of this court and certain opinions from other circuits have indicated that a defendant must exercise all his peremptory challenges before appealing a ruling that denies his challenge for cause. See, e.g., State v. Scriber, supra; State v. Hill, 601 So.2d 684 (La.App. 2d Cir.1992), writ denied, 608 So.2d 192 (La.1992); State v. Jackson, 601 So.2d 730 (La.App. 5th Cir.1992); State v. Isgitt, 590 So.2d 763 (La.App. 3d Cir.1991); State v. Neil, 540 So.2d 554 (La.App. 3d Cir.1989). Indeed, our supreme court has even implied as much. See State v. Lee, supra; State v. Comeaux, 514 So.2d 84 (La.1987); State v. Smith, 491 So.2d 641 (La.1986). Of course, such a requirement clearly existed before the 1983 legislative change. See Repealed LSA-C.Cr.P. Art. 800(A).
According to other pronouncements, exhaustion of peremptory challenges is not a prerequisite for review but, under LSA-C.Cr.P. Art. 921, any error may be deemed harmless when the accused suffers no prejudice, and failure of the defense to use all its peremptories is a factor for consideration in that analysis. See State v. Vanderpool, 493 So.2d 574 (La.1986); State v. Johnson, 595 So.2d 789 (La.App. 2d Cir.1992); State v. Haynes, supra; State v. Ross, 604 So.2d 1036 (La.App. 1st Cir.1992); State v. Young, 569 So.2d 570 (La.App. 1st Cir.1990), writ denied, 575 So.2d 386 (La.1991); State v. Burge, 498 So.2d 196 (La.App. 1st Cir.1986).
[4] The assignment is directed at this questioning of Monk Atkins by the prosecutor:

Q. Did you in factwell let me ask you this, were you wearing any kind of top covering that day, did you have a hat on?
A. I give it to the driver of my truck.
Q. When you went to the bank you had a hat?
A. I had a hat on.
Q. But you gave that to someone at the bank?
A. I don't know if I gave it to them at the bank or out on the Riser Road, but the guy that drove my truck he got my hat and put it on.
Q. Okay, and after that you were not involved in it till it was all over, is that right?
A. That's correct.
Q. Mr. Atkins, did the events you've described that took place at your house take place here in Jackson Parish?
A. It sure did.
Q. Is there any doubt in your mind that the person you've identified as David Essex was the person who was in your house holding the gun to your wife's head?
A. No sir, it was him.
Q. At any point in time did the defendant in this matter make any threats against you or your wife?
A. Oh, yes.
Q. What was the nature of those threats?
A. He said if I let ya'll (sic) go I might as well just go ahead and shoot myself now.
Q. Did he ever threaten you or your wife?
A. Oh, yes.
Q. What did he say that was threatening to you and your wife?
A. I just might as well get rid of you now.
Q. At the time you were in your house with your wife and with the defendant did the defendant ever let go of the handgun that was introduced into evidence as "S-1"?
A. Nono.
Q. At all times you were talking with him or he was talking at the two of ya'll (sic) he had "S-1" in his hand is that right?
A. He had that gun.
Q. Did you ever see himdid you ever see the defendant forcibly take your wife and move her from one place to the other?
[Defense Counsel]: Object to the leading. Your Honor.
BY THE COURT: Overrule the objection.