652 So.2d 1382 (1995)
STATE of Louisiana, Appellee,
v.
Dale DeWayne GEORGE, Appellant.
No. 26867-KA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1995.
*1384 Allan R. Harris, Asst. Indigent Defender, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Rebecca Bush, Asst. Dist. Atty., Shreveport, for appellee.
Before SEXTON, BROWN and WILLIAMS, JJ.
WILLIAMS, Judge.
The defendant, Dale DeWayne George, was indicted by a grand jury for two counts of armed robbery (LSA-R.S. 14:64), one count of aggravated kidnapping (LSA-R.S. 14:44), one count of second degree kidnapping (LSA-R.S. 14:44.1), and one count of aggravated rape (LSA-R.S. 14:42). A unanimous jury found the defendant guilty as charged on all five counts.
The trial court sentenced defendant as follows: 99 years without benefit of parole, probation or suspension of sentence for the armed robbery of Ruth Litton, 99 years without benefit of parole, probation or suspension of sentence for the armed robbery of Lelia Williams, 40 years without benefit of parole, probation or suspension of sentence for the second degree kidnapping of Ruth Litton, life imprisonment without benefit of parole, probation or suspension of sentence for the aggravated kidnapping of Lelia Williams, and life imprisonment without benefit of parole, probation or suspension of sentence for the aggravated rape of Lelia Williams. The sentences for the armed robbery and second degree kidnapping of Ruth Litton were ordered to be served concurrently. The sentences for the armed robbery, aggravated kidnapping and aggravated rape of Lelia Williams were also ordered to be served concurrently, but to run consecutively to the other sentences imposed. The defendant appeals. We affirm the convictions and sentences.

FACTS
On June 8, 1992, the defendant entered Vickie's Lounge on West 70th Street in Shreveport. He ordered a drink and danced with Ruth Litton, the bartender. According to Litton, she and the defendant were left alone in the lounge around midnight. The defendant walked behind the bar, placed a gun to Litton's head and said "this is a robbery." The defendant took money from the cash register and from a cup sitting beside the register which held Litton's wages and tips. He made Litton place the money in a purple, Crown Royal, cloth bag. Then, at gunpoint, he forced her out of the bar and across the street toward a wooded area, stating that he had nothing to lose by killing her. The defendant placed the gun under Litton's hair and directed her to put her arm around him so that they would appear to be a couple. When Litton refused to go into the woods, the defendant forced her further down West 70th Street toward a Circle K convenience store. Litton complained she could not walk any further and at this point the defendant released her. As Litton ran *1385 toward the lounge, she saw the defendant approaching a car with its hood open at the convenience store.
When Litton arrived at Vickie's Lounge, her boyfriend, Barry Mayes, was pulling into the parking lot. Mayes testified he had been at the lounge earlier and had been gone only a short time. He returned to find a hysterical Litton in the parking lot. Mayes telephoned the police.
Vickie Spinks, the owner of Vickie's Lounge, testified she had seen the defendant earlier at another neighborhood bar. Spinks testified that $356.25 was missing from the lounge. On the night of the robbery, with permission from Mayes and Litton, Spinks searched their car and did not find the stolen money.
Lelia Williams testified she had stopped at the Circle K to get gas and oil. As she was putting oil in her car, the defendant approached and asked to help. When she declined his offer, he grabbed the oil can, pushed her aside and put the oil in her car. The defendant then pulled a gun and told her she was going to drive him where he needed to go. Once inside the car, the defendant kept the gun in his lap pointed at Williams. She noticed that he had a Crown Royal bag which contained money. Williams further testified that the defendant stated he had killed before and would kill again if she did not cooperate.
The defendant forced Williams to drive to a secluded area. He took the car keys and attempted to tie Williams' hands with the straps of her overalls. After unsuccessfully attempting to tie Williams with the straps, he removed her clothing and raped her at gunpoint. During the encounter, he bit her on the inside of her left thigh. He attempted anal intercourse, but Williams resisted and told him she would scream. The defendant then told Williams she "better think of something else." Fearing for her life, Williams performed oral sex on the defendant. The defendant then raped Williams a second time. After raping her, he robbed her of approximately $200 at gunpoint.
The defendant allowed Williams to put her overalls back on, but he initially refused to let her put on her shirt. The defendant took the shirt and thoroughly wiped the car. He then tied Williams' hands and feet with her shoestrings. He attempted to steal Williams' car, but it was stuck in the mud. After checking to make sure Williams was securely bound, he left her sitting in the car.
Williams escaped and ran to the home of Bill and Vivian Woods. Bill Woods testified that Williams was screaming, crying and hysterical when he answered the door. Williams told Bill Woods she had been abducted, raped and robbed. The Woods called the police who took Williams to Louisiana State University Medical Center where a rape exam was performed by Dr. Tod Fontenot. Dr. Fontenot testified there was non-motile sperm in the vaginal fluid and motile sperm in the cervical fluid. Dr. Fontenot opined that Williams recently had sexual intercourse. Dr. Fontenot also found a bruise on Williams' left inner thigh and constriction marks on her ankles and wrists that appeared to be marks left from being tied.
Dawn Tingle, a serologist with the North Louisiana Crime Lab, testified that tests for alcohol and drugs in Williams' blood were negative. Dr. Robert Giles, an expert in the field of DNA identity testing, testified that DNA analysis performed on the evidence received by his lab revealed that the DNA extracted from the defendant's blood matched the DNA extracted from the semen stains on Williams' underwear. Dr. Giles testified that only one person out of two hundred million would produce the same results. After reviewing the test results, Dr. Giles opined that the semen stains on Williams' underwear were those of the defendant.
Roger Boggs testified that approximately two years earlier, he and the defendant worked for the same towing company. Boggs further testified that he recognized the defendant at a local bar one night, soon after seeing a "Crime Stoppers" report on television that indicated the police were looking *1386 for the defendant. Boggs initiated conversation with the defendant who initially denied his identity but later admitted it. The defendant told Boggs in some detail of the robbery of Litton and the rape of Williams. Boggs notified a security guard. The police were alerted of the defendant's presence and his fugitive status and the defendant was apprehended in the nightclub. During the course of the investigation Barry Mayes, Ruth Litton, Lelia Williams and Vickie Spinks independently identified the defendant from a photographic lineup.
At trial, the defendant testified on his own behalf. He stated he met Lelia Williams at another neighborhood bar and the two of them left the bar, smoked crack cocaine in her car and talked about buying more drugs. According to the defendant, Williams drove to Vickie's Lounge, gave him $180 to buy drugs and crossed the street to put gas in her car. The defendant stated he was going to buy cocaine from Barry Mayes but when he realized Ruth Litton had the drugs and Mayes was not around, he decided to take the drugs from Litton. The defendant denied using a gun, stealing money or kidnapping Litton. He stated that after he stole the drugs, Williams drove to a secluded place and they had consensual sex. According to the defendant, when the car became stuck Williams panicked and stated that she had to get home. The defendant denied admitting to Boggs that he committed the crimes.

DISCUSSION
Although the defendant initially asserted eighteen assignments of error, we address only those briefed on appeal. The remaining assignments of error were neither briefed nor argued and are considered abandoned. URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990).

ASSIGNMENT OF ERROR NO. 1: MOTION TO SEVER
By this assignment, the defendant asserts that the charges were improperly joined in a single five count indictment and that the trial court erred by refusing to sever them. LSA-C.Cr.P. Art. 493 provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
The trial court has discretion to order separate trials when two or more offenses have been improperly joined to the detriment of the defendant or the state. See LSA-C.Cr.P. Art. 495.1. However, a motion for severance is addressed to the sound discretion of the trial court, and the ruling should not be disturbed on appeal absent a showing of abuse of discretion. State v. Jeffers, 623 So.2d 882 (La.App. 2d Cir.1993).
All five crimes charged in the five count indictment are triable by the same mode of trial. The two armed robbery charges as well as the second degree and aggravated kidnapping charges are necessarily "of the same character." Additionally, the aggravated rape was a part of the same transaction as one of the robberies and one of the kidnappings. In State v. Celestine, 452 So.2d 676 (La.1984), the supreme court applied Article 493 and upheld the joinder of two counts of aggravated rape in one indictment. In State v. Harris, 627 So.2d 788 (La.App. 2d Cir. 1993), this court held two counts of aggravated rape were properly joined in one indictment.
In the instant case, the evidence of each crime was compartmentalized and not confused. The primary witnesses in the Litton robbery and kidnapping were Litton, Mayes and Spinks. The primary witnesses in the Williams kidnapping, robbery and rape were Williams, Bill Woods, Dr. Fontenot and Dr. Giles. At trial, the law enforcement officers involved informed the jury of their *1387 investigations and findings in each case. Following detailed instructions from the trial court, the jury was given five verdict forms and it later returned five separate verdicts. In short, the record is devoid of any evidence that the defendant was prejudiced by the joinder of the offenses. A defendant in any case bears a heavy burden when alleging prejudicial joinder of offenses as grounds for a motion to sever. Factual rather than conclusory allegations are required. State v. Davis, 92-1623 (La. 05/23/94), 637 So.2d 1012. The trial court did not abuse its great discretion by refusing to sever the offenses.
ASSIGNMENT OF ERROR NO. 3: PRIOR MANSLAUGHTER CONVICTION
By this assignment, the defendant argues the state should not have been allowed to introduce a prior manslaughter conviction into evidence for impeachment purposes. In short, the defendant asserts that his manslaughter guilty plea was not knowingly and intelligently made and the state should be precluded from introducing it in this trial.
Apparently, the defendant pled guilty to middle grade theft on September 16, 1975, and to manslaughter on April 4, 1977. The defendant states that on June 18, 1990, the trial court found his guilty plea to middle grade theft was unconstitutional and could not serve as a basis for enhancing his penalty for the manslaughter conviction. The defendant contends that the only reason he pled guilty to manslaughter was because of the threat of being tried as a second-felony offender. The defendant argues that had he known the state could not use the middle grade theft conviction as a basis for filing a multiple offender bill, he would not have pled guilty to manslaughter.[1]
In State v. Johnson, 504 So.2d 1003 (La. App. 1st Cir.1987), the defendant moved to withdraw his guilty pleas on the grounds that there were substantial other factors involved concerning the pleas of which neither the defendant nor his counsel were aware at the time the Boykin examination was conducted. The trial court denied the motion and the court of appeal affirmed, holding:
Defendant has failed to allege a legal basis for his motion, nor has he set forth any evidence that the pleas were defective in any manner. The bare allegation that substantial factors existed which were unknown at the time the pleas were entered does not entitle a defendant who has pled guilty to withdraw his pleas.
Johnson, supra, at 1005.
The issue presented in the instant case is whether the manslaughter conviction, if it were wrongfully obtained, should have been suppressed at the trial of the current offenses. The defendant introduced no evidence to support his claim pertaining to the alleged wrongfully obtained manslaughter conviction. The record does not contain the minutes of court from the manslaughter plea, a transcript of the Boykin examination in question, an affidavit from the defendant, an affidavit from the defendant's previous trial attorney, or an offer of proof. Although the defendant objected to the use of the prior manslaughter conviction, there is no indication that he provided the trial court with any proof of his assertion that his manslaughter plea was entered involuntarily. Bare allegations are insufficient to raise error. The record does not support the defendant's claim that his prior manslaughter conviction was wrongfully obtained. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4: EXCULPATORY MEDICAL REPORTS
The defendant asserts that the state withheld certain medical records of Lelia *1388 Williams that contained exculpatory material. The record shows that the defendant was given access to the emergency room and rape examination reports. However, in a pretrial proceeding, the defendant alleged that he was denied access to pertinent medical records from LSU Medical Center.
Suppression by the prosecution of evidence favorable to an accused upon request, violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Barker, 628 So.2d 168 (La.App. 2d Cir.1993), writ denied, 93-3194 (La. 03/25/94), 635 So.2d 236.
In the instant case, the trial court issued a subpoena duces tecum for the custodian of records and conducted an in camera inspection of the records. The court stated:
I have compared those records that were presented under seal from a representative of the LSU Medical Center to the [medical] records that are in the record, the records that are filed in the suit record, and they are one in the same with exception of some laboratory results that I have reviewed carefully. I do not believe that the laboratory results constitute Brady material. I do not believe that the laboratory results are relevant to any extent whatsoever in this case, so I am going to deny the request that the defense see those records.
We have reviewed the medical records in question and agree with the trial court that the records are not exculpatory material. The laboratory results are neither material to the case nor favorable to the accused. Therefore, the trial court did not err in refusing to allow the defendant to inspect them. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 7: QUESTIONING OF PROSPECTIVE JURORS
By this assignment, the defendant complains that the trial court prevented him from questioning prospective jurors concerning their attitudes about the defendant's prior manslaughter conviction. The record reflects that during voir dire, defense counsel indicated that the defendant intended to testify in the trial. Following a bench conference, the trial court instructed the jury on the law regarding prior convictions. Counsel then asked the prospective jurors, "[T]he fact that a person has a prior conviction based on the law that was just read to you, would you agree that that does not mean that a person who testifies and has a prior conviction is not telling the truth?" Later, counsel asked, "So basically what I'm asking is, can you assure me that you will not find my client guilty solely because he has a prior convictions [sic]?" And, further, defense counsel asked the venire how they felt about someone having a prior conviction and now being on trial for another offense. Contrary to his assertion on appeal, the defendant was allowed to question the venire concerning their attitudes about his prior conviction.
After the venire had been excused from the courtroom, the defendant's attorney lodged the following objection: "I have asked to be allowed to advise the jury of the fact that Mr. George has a prior conviction for manslaughter. And we would ask that we be allowed to do that." The trial court overruled the objection noting that hypothetical questions concerning the jurors' attitudes about prior convictions were proper and that the court did not restrict the defendant's right to ask them.
The purpose of voir dire examination of prospective jurors is to determine their competence and impartiality, and to afford counsel a basis to make challenges for cause and to secure information for the intelligent exercise of peremptory challenges. A defendant will not be allowed to attempt to elicit from a juror in advance his opinion concerning the weight of certain evidence that might be introduced at trial or to argue his case. State v. Graham, 486 So.2d 1139 (La.App. 2d Cir.1986) writ denied, 493 So.2d 633 (La.1986); State v. Lockhart, 629 So.2d 1195 (La.App. 1st Cir.1993), writ denied, 940050 *1389 (La. 04/07/94), 635 So.2d 1132. The scope of voir dire examination is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Hall, 616 So.2d 664 (La.1993). A review of the voir dire in its entirety reveals that the defendant was given very wide latitude in questioning prospective jurors concerning their attitudes about the defendant's prior conviction. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 8: CHALLENGES FOR CAUSE
The defendant also complains that the trial court erred in granting the state's challenge for cause of prospective jurors Amelia Hunter and Belzora Plater. Hunter reported that her father had been "falsely accused" in a car accident of intentionally running a traffic light, killing a young man. Hunter said, however, that the event did not color her perception of the judicial system and she believed she could apply the law. Plater's son was charged with murder. His first trial ended in a hung jury and a second trial ended in acquittal. Plater admitted she did not know how that experience would affect her ability to serve, but she believed she could follow the law. The minutes of court reflect the state used only seven of its twelve peremptory strikes.
An erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such a ruling is the exercise by the state of more peremptory challenges than it is entitled to by law. LSA-C.Cr.P. Art. 800(B). Assuming, without deciding, that the trial court erred in granting the state's challenge for cause of Hunter and Plater, the defendant failed to make the required showing of prejudice. State v. Essex, 618 So.2d 659 (La.App. 2d Cir.1993). Accordingly, this assignment has no merit.
The defendant also complains that the trial court erred in refusing to grant his challenge for cause of Janet Emanuel. Emanuel stated that her grandmother had been raped and murdered over thirty years ago. Emanuel was ten years old at the time of the crime. Outside the presence of the other prospective jurors, defense counsel informed Emanuel that his client had a previous manslaughter conviction and that he was now on trial for aggravated rape. Defense counsel then asked Emanuel if she could be fair to his client considering the previous conviction and the current charge. Emanuel responded:
I think I could be fair to your client, but I would have to be honest in saying when she talked yesterdaywhen she asked the question about talking about the sexual things, the talking about of what I understood you said would be talked about in the trial, would make me think about her. I don't associate him with what happened to my grandmother at all.
Emanuel repeatedly told the attorneys that she was capable of separating the crime against her grandmother from the charges brought against the defendant. The defense challenged Emanuel for cause. In denying the challenge, the trial court stated:
I have carefully considered Ms. Emanuel. I specifically paid close attention to her demeanor and the way she said what she said, just everything about her physical make-up. And in addition to that, I considered the substance of what she said. I do believe that she is very honest and sincere and genuine. I think her demeanor is consistent with that. She appears to be very calm and she is very articulate. She is a logical person. She speaks logically and I think she thinks logically. She teaches math which is based on logic. She said very clearly that she could be fair and impartial and would keep the experience of her grandmother separate from this.
Regarding the prior conviction, she said that's the past. She was very clear and concise about that. And very clear throughout that she would not associate this case with what happened to her grandmother.... Here, Ms. Emanuel's *1390 testimony, I think, is also clear and compelling, that she can be fair and impartial. And I feel very strongly based on what I've seen and heard that she can be fair and impartial. Accordingly the challenge for cause is denied.
The defense objected and used a peremptory exception to strike Emanuel. The minutes of court reflect that the defense used all twelve of its peremptory challenges during the course of voir dire.
When a defendant uses a peremptory challenge after a challenge for cause has been denied, the defendant, in order to obtain a reversal of his conviction, must show erroneous denial of the challenge for cause and use of all peremptory challenges prior to completion of the jury panel. LSA-C.Cr.P. Art. 800; State v. Ross, 623 So.2d 643 (La.1993). The record shows that the defendant, after his challenge for cause of Emanuel was denied, exhausted his peremptory challenges before completion of the jury panel. Therefore, all that remains to be determined is whether the defendant has shown that the trial court erred in denying his challenge for cause.
A trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror. Such determinations will not be disturbed on review unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Bourque, 622 So.2d 198 (La.1993). In State v. Walker, 577 So.2d 770 (La.App. 2d Cir.1991), writ denied, 581 So.2d 704 (La. 1991), this court held that the fact that a juror personally had been the victim of a crime will not necessarily preclude that juror from serving on a jury so long as the juror's partiality has been unaffected. In Walker the prospective juror's brother had been murdered several years earlier and the trial court refused to excuse her solely on the grounds that her brother had been the victim of a crime. This court agreed and upheld the trial court's decision citing State v. Jones, 381 So.2d 416 (La.1980) and State v. Valentine, 464 So.2d 1091 (La.App. 1st Cir.1985), writ denied, 468 So.2d 572 (La.1985). Again, in State v. Cutwright, 626 So.2d 780 (La.App. 2d Cir.1993), writ denied, 93-2931 (La. 02/25/94), 632 So.2d 761, this court held the trial court did not err in refusing to excuse for cause a prospective juror whose nephew had been killed three years earlier.
In the instant case, the trial court placed its reasons for denying the challenge on the record. After a careful review of the record as a whole, including the trial court's stated reasons, we find the trial court's decision to deny the challenge was not an abuse of its discretion. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 16: MOTION FOR WRIT OF ATTACHMENT OR RECESS
By this assignment, the defendant asserts that the trial court erred by not granting a "writ of attachment" or, in the alternative, a recess to secure the attendance of Kenny Barlow. Roger Boggs testified that he trained the defendant when they worked for Barlow. The defendant asserts he subpoenaed Barlow to testify that Boggs was an unreliable employee who was fired and that Boggs did not train the defendant. Barlow did not attend any portion of the trial and was unavailable when called. The defendant asked the trial court for a writ of attachment. The trial court noted that available information indicated Barlow was on his way to New Orleans and there was no indication as to exactly when Barlow would return. The request for the writ of attachment or recess was denied.
The state and the defendant entered a stipulation which the trial court read to the jury. The stipulation provided that Barlow was personally served a subpoena commanding his attendance, that Barlow assured defense counsel he would be available, that Barlow had left Shreveport and was not available to testify, and that no negative inference was to be drawn regarding his absence.
It is within the discretion of the trial court to issue an order of attachment for a *1391 witness who fails to appear. LSA-C.Cr.P. Art. 737. The right of an accused to have attachments issued to compel attendance of witnesses exists only when the circumstances and conditions are such as to call legally for that writ. State v. James, 545 So.2d 560 (La.App. 4th Cir.1989), writ denied, 551 So.2d 618 (La.1989). Defense counsel represented to the trial court that Barlow would testify that Boggs worked only a couple of weekends, failed to show up for work, and did not train anyone before being fired. Depending on the purpose of this testimony, it may not have been admissible. See LSA-C.E. Art. 608(A)(3), (B). Additionally, the testimony may well have failed to survive an objection to its relevance. See LSA-C.E. Arts. 401, 402. There was no indication that Barlow would provide any testimony directly related to the events at issue. Under the circumstances, we find no abuse of discretion in the trial court's denial of the writ of attachment.
A motion for recess is evaluated by the same standards as a motion for a continuance. To be entitled to a recess to secure the presence of a witness, the defendant must establish that (1) the absent witness is expected to testify to material facts so that the presence of the witness at trial is necessary; (2) the witness will probably be available at the time to which the trial is deferred; and (3) due diligence was used in an effort to procure attendance of the witness. State v. Wille, 559 So.2d 1321 (La. 1990), appeal after remand, 595 So.2d 1149 (La.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). The decision on a motion for a recess lies within the discretion of the trial court and will not be overturned absent abuse of that discretion. Wille, supra.
Considering that the testimony to be offered by Barlow was not material, was only remotely relevant, and that the trial court was not assured that Barlow would be present when trial was to resume after recess, the trial court did not abuse its great discretion in denying the motion for a recess. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 17: SENTENCING
By this assignment, the defendant asserts that the trial court erred in imposing excessive sentences. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1 Sec. 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied, 94-0348 (La. 05/20/94), 637 So.2d 476. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Lee, 25,917 (La.App. 2d Cir. 05/04/94), 637 So.2d 656; State v. Grant, 627 So.2d 747 (La.App. 2d Cir.1993).
Aggravated rape and aggravated kidnapping carry mandatory sentences of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:42(C), 14:44. These statutorily mandated sentences have been found to be constitutional. State v. Foley, 456 So.2d 979 (La.1984); State v. Brown, 557 So.2d 1085 (La.App. 2d Cir.1990); State v. Clark, 437 So.2d 879 (La.App. 2d Cir.1983), writ denied, 442 So.2d 460 (La.1983); State v. Walker, 540 So.2d 1059 (La.App. 2d Cir.1989). The statutory range of imprisonment for armed robbery is not less than five and not more than ninety-nine years. LSA-R.S. 14:64. The trial court sentenced the defendant to ninety-nine years for each of the armed robbery convictions. Maximum sentences are reserved for the worst offenders. State v. Scott, 26,199 (La.App. 2d Cir. 08/19/94), 641 So.2d 1091; State v. Alexander, 602 So.2d 291 (La.App. 2d Cir.1992), writ denied, 92-2674 (La. 04/22/94), 637 So.2d 151.
Here, the defendant robbed Ruth Litton at gunpoint. He forced her out of the bar and *1392 down the street all the while holding the gun against the back of her head. He threatened to kill her. This terrorized Litton so severely she could not walk and she testified she wakes up screaming thinking about the attack. Litton also testified she was unable to return to work because of the emotional trauma of the robbery. The defendant robbed Lelia Williams at gunpoint after kidnapping and raping her. He also threatened to kill Williams. The trial court observed the two women and found the damage done to them by the defendant to be tremendous. In light of the aggravating circumstances and the harm to the victims, the maximum sentences for the armed robberies are appropriate.
Finally, the defendant was sentenced to forty years without benefit of parole, probation or suspension of sentence for the second degree kidnapping of Ruth Litton. For the reasons expressed above, the sentence is not excessive.
The record indicates that the trial court carefully considered the sentencing guidelines, listed aggravating circumstances which allowed it to depart from the suggested sentences, considered possible mitigating circumstances, and then rejected the guidelines pursuant to its great discretion. The trial court listed four aggravating factors including: deliberate cruelty to the victims, risk of death or great bodily harm to more than one person, threats of actual violence, and significant permanent injury to the victims. La. S.G. § 209 B. Accordingly, the trial court did not err in departing from the recommended sentences under the guidelines. State v. Smith, 93-0402 (La. 07/05/94), 639 So.2d 237.
Additionally, before sentencing, the trial court examined the defendant's previous conviction for manslaughter and reviewed a Department of Public Safety and Corrections report regarding previous arrests and convictions. The trial court sentenced within the statutory limits. After reviewing the record in it entirety, we do not find the sentences so disproportionate to the crimes as to shock the sense of justice. We find no abuse of the trial court's discretion.
The trial court ordered the sentences for the robbery and kidnapping of Ruth Litton to run concurrently. The trial court ordered the sentences for the kidnapping, rape and robbery of Lelia Williams to run concurrently. However, the two sets of sentences are to run consecutively. When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. LSA-C.Cr.P. Art. 883. It is within the trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988).
Concurrent sentences arising out of a single course of conduct are not mandatory, State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985), and consecutive sentences under those circumstances are not necessarily excessive. State v. Ortego, 382 So.2d 921 (La. 1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987). In any event, while all of the offenses occurred on the same date, they involved two different victims and are not considered a single course of conduct. Therefore, the trial court did not err in directing the sentences be served consecutively. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 18: VERDICT CONTRARY TO LAW AND EVIDENCE
In a conclusory statement, the defendant asserts that the verdict was contrary to the law and evidence. This is a question of sufficiency of the evidence, an issue properly posed by a motion for post-verdict judgment of acquittal under LSA-C.Cr.P. Art. 821.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after *1393 viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. McLemore, 26,106 (La. App. 2d Cir. 06/24/94), 640 So.2d 847.
Eyewitnesses placed the defendant at Vickie's lounge on the night of the robbery and kidnapping. Litton gave a detailed account of the robbery and abduction which was corroborated in part by Williams. Williams also identified her attacker, testified against him and withstood cross-examination. The Woods recounted for the jury Williams' emotional state immediately after the rape as well as her allegations pertaining to the abduction, rape and robbery. Dr. Giles testified that the DNA of the defendant was found on the underwear of Williams. Contrary to the testimony of the defendant, no alcohol or drugs were found in Williams' blood. Furthermore, shortly after the attacks, Williams and Litton identified the defendant in a photographic lineup.
After reviewing the evidence in its entirety in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of each of the crimes charged were proven beyond a reasonable doubt.
The defendant also challenges by this assignment of error the trial court's refusal to list all the responsive verdicts to aggravated rape in its jury charge. The responsive verdicts to aggravated rape are: attempted aggravated rape, forcible rape, attempted forcible rape, sexual battery, simple rape and attempted simple rape. LSA-C.Cr.P. Art. 814(A)(8). The trial court did not charge the jury concerning simple rape or attempted simple rape.
Simple rape is a rape committed when the anal or vaginal intercourse is deemed to be without the lawful consent of a victim who is not the spouse of the offender because it is committed under any one or more of the following circumstances:
(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by an intoxicating, narcotic, or anesthetic agent, administered by or with the privity of the offender; or when victim has such incapacity, by reason of a stupor or abnormal condition of mind from any cause, and the offender knew or should have known of the victim's incapacity; or
(2) When the victim is incapable, through unsoundness of mind, whether temporary or permanent, of understanding the nature of the act and the offender knew or should have known of the victim's incapacity; or
(3) When the female submits under the belief that the person committing the act is her husband and such belief is intentionally induced by any artifice, pretence, or concealment practiced by the offender.
LSA-R.S. 14:43. If there is no evidence reasonably supporting a verdict, then such a verdict may be excluded as a possible responsive verdict. LSA-C.Cr.P. Art. 814(A); State v. Harris, 627 So.2d 788 (La.App. 2d Cir.1993), writ denied, 93-3188 (La. 03/18/94) 634 So.2d 851; State v. Trosclair, 584 So.2d 270 (La.App. 1st Cir.1991), writ denied, 585 So.2d 575 (La.1991).
The record lacks evidence to support a verdict of simple rape or attempted simple rape. The defendant asserted that Williams took drugs immediately prior to the incident and that she engaged in consensual sexual intercourse. There was no testimony regarding Williams' capacity. Williams testified that the defendant raped her at gunpoint. More importantly, blood samples taken from Williams at the hospital revealed no trace of alcohol or drugs. The evidence does not reasonably support a verdict of simple rape or attempted simple rape. Therefore, the trial court did not err in refusing to instruct the jury on simple rape or attempted *1394 simple rape. Even if it were error, it was not prejudicial to the defendant. The jury apparently believed that the defendant was armed with a dangerous weapon and found that all of the elements of aggravated rape were met.
The defendant requests that this court review the record for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.1993), modified on other grounds, 624 So.2d 1208 (La.1993). No errors patent appear of record.

CONCLUSION
Because the defendant's assignments of error lack merit, the convictions and sentences of Dale DeWayne George are affirmed.
AFFIRMED.
NOTES
[1] We note that in its appellate brief, the prosecution indicates that the defendant pled guilty to manslaughter, reduced from second degree murder, and was sentenced to an agreed term of forty years as a second-felony offender. The prosecution contends that the defendant knew he would be sentenced to forty years as a multiple offender and he pled guilty to avoid the possibility of life imprisonment if convicted of second degree murder. The prosecution argues that if the defendant pled guilty to an offense with an agreed upon forty-year sentence, he would hardly have been unwilling to plead guilty where he faced a maximum of twenty-one years.